**ALLWAY TAXI, INC., et al., Plaintiffs,**

v.

**The CITY OF NEW YORK et ano., Defendants.**

**No. 71 Civ. 2293.**

United States District Court, S. D. New York.

April 10, 1972.

Friedlander, Gaines, Ruttenberg & Goetz, New York City, for plaintiffs; Edward Cherney, Merril A. Mironer, New York City, of counsel.

J. Lee Rankin, Corp. Counsel, New York City, for defendants; Israel Rubin, Renee Modry, New York City, of counsel.

## OPINION

MacMAHON, District Judge.

Plaintiffs, fifteen corporations owning and operating licensed taxicabs in New York City, move under Rule 65, Fed.R.Civ.P., for a preliminary injunction against enforcement of a New York City ordinance requiring exhaust emission controls for licensed taxicabs. Defendants cross-move under Rule 12(b) (c), Fed.R.Civ.P., for dismissal of the action for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted, or, in the alternative, for judgment on the pleadings.

The action seeks a declaratory judgment that the challenged ordinance[1] is null and void insofar as it sets exhaust emission controls for licensed taxicabs.

The ordinance requires licensed taxicabs to use gasoline containing no more than specified low levels of lead and to use only non-leaded gasoline after January 1, 1974. The ordinance also requires pre-1970 taxicabs to be equipped with emission control devices which comply with 1970 federal standards and later models to be equipped with such emission control devices as may be specified by the New York City Taxi and Limousine Commission.

■ A preliminary injunction is an extraordinary remedy and should be granted only where the applicant shows a strong likelihood of ultimate success on the merits and irreparable injury unless such relief is granted, or where the applicant makes a limited showing of probable success but raises substantial issues requiring further inquiry and shows that the harm to him outweighs the injury to others if the relief is denied.[2]

Plaintiffs' claim of ultimate success on the merits depends on the validity of their contention that the ordinance is null and void because the field of motor vehicle emission control has been preempted by the federal Clean Air Act[3] and on the soundness of their argument that the ordinance is unconstitutional because it denies plaintiffs equal protection of the law.

■ A local ordinance will be upheld against a claim of preemption unless there is such an actual conflict between the local and federal regulatory schemes that both cannot stand in the same area or unless there is clear evidence of congressional intent to preempt the field. Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).

Plaintiffs rely upon two sections of the Clean Air Act, which, they claim, show a clear congressional intent to preempt the regulation of automobile exhaust emissions.

■ The first preemption section, urged by plaintiffs, prohibits states or their subdivisions from regulating fuel and fuel additives if the federal administrator has found that no control is necessary or has already prescribed standards. 42 U.S.C. § 1857f–6c(c) (4). Since plaintiffs neither show nor contend that either condition has been fulfilled here, we see no conflict at present between the City's regulation of the lead content of gasoline and this preemption section.

The second preemption section, upon which plaintiffs rely, prohibits states or their subdivisions from creating standards for exhaust emission control devices for new motor vehicles and new motor vehicle engines. It also prohibits

---

1. Section 2318 of Chapter 65 of the Administrative Code of the City of New York.

2. Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190 (2d Cir., 1971); Weiss v. Walsh, Docket Nos. 71–1398, 71–1852 (2d Cir., Oct. 29, 1971); Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1205–1206 (2d Cir.

1970); Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319 (2d Cir.), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969).

3. 42 U.S.C. § 1857. Section 1857f–1 of Title 42 creates federal controls over motor vehicle emissions.

states from setting standards of approval as conditions precedent to the initial sale or registration of new motor vehicles. 42 U.S.C. § 1857f–6a.

Where exercise of the local police power serves the purpose of a federal Act, the preemptive effect of that Act should be narrowly construed. *Chrysler Corp.* v. *Tofany,* 419 F.2d 499 (2d Cir. 1969). We think the purpose of the federal Act is served by the challenged ordinance. Surely, New York City has the power at least to try to clean the very air that people breathe. Plainly, that is the purpose of the ordinance, and it is clearly compatible with the goal of the federal Clean Air Act. *Huron Portland Cement Co.* v. *City of Detroit,* 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960). Moreover, both the history and text of the Act show that the second preemption section was made not to hamstring localities in their fight against air pollution but to prevent the burden on interstate commerce which would result if, instead of uniform standards, every state and locality were left free to impose different standards for exhaust emission control devices for the manufacture and sale of new cars.[4]

Thus, the second preemption section restricts states and localities from setting their own standards for new motor vehicles, which are defined as motor vehicles "the equitable or legal title to which . . . [have] never been transferred to an ultimate purchaser."[5] The statutory definition reveals a clear congressional intent to preclude states and localities from setting their own exhaust emission control standards only with respect to the manufacture and distribution of new automobiles. That narrow purpose is further suggested by the remainder of the section, which prohibits

states and localities from setting standards governing emission control devices before the initial sale or registration of an automobile. Finally, congress specifically refused to interfere with local regulation of the use or movement of motor vehicles after they have reached their ultimate purchasers.[6]

We do not say that a state or locality is free to impose its own emission control standards the moment after a new car is bought and registered. That would be an obvious circumvention of the Clean Air Act and would defeat the congressional purpose of preventing obstruction to interstate commerce. The preemption sections, however, do not preclude a state or locality from imposing its own exhaust emission control standards upon the resale or reregistration of the automobile. Nor do they preclude a locality from setting its own standards for the licensing of vehicles for commercial use within that locality. Such regulations would cause only minimal interference with interstate commerce, since they would be directed primarily to intrastate activities and the burden of compliance would be on individual owners and not on manufacturers and distributors.

The challenged ordinance would, at most, require taxicab owners, seeking a license to operate in the City, to meet at their own expense emission control standards established by the Taxi and Limousine Commission.[7] Such a requirement is fully supported by the congressional call for local cooperation toward the prevention and control of air pollution.[8] We conclude that the ordinance is neither in conflict with, nor precluded by, the second preemption section of the Clean Air Act.

---

4. H.R.Rep. No. 728, 90th Cong., 1st Sess. 1967 U.S.Code Cong. & Admin.News, p. 1956.

5. 42 U.S.C. § 1857f–7(3).

6. 42 U.S.C. § 1857f–6a(c).

7. Actually, at present the ordinance does no more than insure the installation and

upkeep of the federally required devices, since New York City has set no standards of its own. Such policing activity after a car has reached its ultimate purchaser is specifically left to the states and their localities. 42 U.S.C. § 1857–5a(f).

8. 42 U.S.C. § 1857a.

We next consider plaintiffs' contention that the ordinance denies plaintiffs equal protection of the law in that it applies only to taxicabs and not to other motor vehicles.[9]

■ It is not a requirement of equal protection that "all evils of the same genus be eradicated or none at all." Railway Express Agency v. New York, 336 U.S. 106, 110, 69 S.Ct. 463, 466, 93 L.Ed. 533 (1949). Legislation may approach one phase of a problem at a time as long as it avoids invidious discrimination. Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

*Williamson* held that it was not invidious discrimination for the Oklahoma legislature to regulate the sale of eyeglasses by opticians but not by sellers of ready-to-wear glasses because the legislature might have felt that the problems of regulating opticians were greater or different from the problems of regulating sellers of ready-to-wear glasses.

■ In the present case, the New York City Council may feel, quite rationally, that the pollution caused by taxicabs is greater or more acute than that caused by other vehicles, or it may feel that the problems of regulating taxicabs are distinct from the problems of regulating other vehicles. Plaintiffs fail to establish that the distinction created by the ordinance bears no rational relationship to the purpose of the ordinance and, without such a showing, plaintiffs' denial of equal protection argument is without merit.

We turn now to plaintiffs' claim that they will suffer irreparable injury if an injunction is not granted.

■ Plaintiffs maintain that enforcement of the ordinance will cause them irreparable injury on three grounds. First, they assert that low-lead gasoline is unavailable and that it will cost more than leaded gasoline when it becomes available. Defendants show, however, that Gulf Oil Co. does have qualifying low-lead gasoline available and that it sells for one cent less per gallon than regular leaded gasoline. Defendants further assert that Shell Oil Co. and Mobil Oil Co. also have low-lead gasoline available at substantially the same cost as regular leaded gasoline. Plaintiffs fail to dispute these facts and, thus, fail to show the possibility of irreparable economic injury if required to use low-lead gasoline in their taxicabs.

■ Plaintiffs' second claim is that the non-leaded gasoline required after January 1, 1974 will be more expensive than leaded fuels and that it will damage the engines of their taxicabs. There is some indication that non-leaded gasoline might cost more than present gasoline, but since its use is not required until 1974, the future requirement poses no likelihood of immediate injury, and the forecast of future injury is too remote and speculative to warrant injunctive relief. Further, defendants show that it is doubtful that non-leaded gasoline will cause damage to taxi engines. All parties agree that by 1973 the major American automobile manufacturers will be producing almost nothing but engines designed specifically for non-leaded gasoline, and since taxis are traded in every 16 to 18 months, most taxis will have such engines by 1974. In light of these facts, plaintiffs' second claim falls short of showing irreparable injury.

■ Plaintiffs' third argument is that the emission control devices required by the ordinance will be significantly expensive. The requirement of such devices for pre-1970 taxicabs is virtually moot, since taxicabs are traded every 16 to 18 months. As for vehicles manufactured in 1971 and thereafter, the present New York City standards are no stricter than federal standards. Although the ordinance gives the Taxi

---

9. The section of the statute dealing with low-lead gasoline standards no longer presents an equal protection problem since those standards have since been made applicable to all automobiles in New York City.

and Limousine Commission authority to set stricter standards, the commission has not yet done so and, thus, taxicab owners face no present threat of increased cost.

We conclude, therefore, that plaintiffs have failed to establish irreparable injury if a preliminary injunction is denied.

We turn now to defendants' motions. Defendants first seek dismissal of this action for lack of subject matter jurisdiction under 28 U.S.C. § 1331, in that the amount involved is less than $10,000, and for lack of a federal question.

■ The object of this action is to enjoin the enforcement of an ordinance. The amount in controversy, therefore, is determined by the cost which would be incurred by taxi owners if the ordinance were enforced. Packard v. Banton, 264 U.S. 140, 44 S.Ct. 257, 68 L.Ed. 596 (1924). If the ordinance is enforced, plaintiffs might be forced to purchase more expensive gasoline or to install costly emission control devices and, over a period of time, these increased expenses could amount to $10,000, even for a small fleet owner. We, therefore, reject defendants' contention that the necessary jurisdictional amount cannot be established here.

■ We also reject defendants' contention that no federal question is involved since plaintiffs allege both preemption by a federal statute and denial of their right to equal protection under the Fourteenth Amendment. Thus, we find that this court has jurisdiction over the subject matter of this action, and defendants' motion to dismiss for lack of such jurisdiction is denied.

Defendants' second motion is for dismissal for failure to state a claim upon which relief may be granted. Since we have considered matters outside the pleadings, we shall treat this as a motion for summary judgment and shall consider it on the merits.

■ This is an action for a declaratory judgment that a New York City ordinance is null and void. There are no disputed issues of fact. We have examined the law involved in our consideration of plaintiffs' motion for a preliminary injunction and have found that the federal Clean Air Act does not preempt New York City from enacting the ordinance in question and that the ordinance does not deprive plaintiffs of equal protection of the law. Consequently, summary judgment in favor of defendants should be granted.

Accordingly, plaintiffs' motion for a preliminary injunction is denied, and defendants' motion to dismiss for lack of subject matter jurisdiction is also denied. Defendants' motion for summary judgment is granted. There being no just reason for delay, the Clerk of the court is directed to enter judgment dismissing the action.

The foregoing constitutes this court's findings of fact and conclusions of law, as required by Rule 52, Fed.R.Civ.P.

So ordered.