**EXXON CORPORATION, Plaintiff,**

v.

**The CITY OF NEW YORK et al., Defendants.**

**GETTY OIL CO. (Eastern Operations), INC., et al., Plaintiffs,**

v.

**The CITY OF NEW YORK et al., Defendants.**

**Nos. 73 Civ. 1047, 1093.**

United States District Court,
S. D. New York.
March 22, 1973.

Shearman & Sterling, New York City, for plaintiff Exxon Corp. by Joseph T. McLaughlin, George J. Wade, New York City, Robert L. Norris, Houston, Tex.

Shea, Gould, Climenko & Kramer, New York City, for plaintiff Getty Oil Co. by Miles McDonald, Jesse Climenko, Robert Gold, New York City.

David Schoenbrod, for National Resource Council.

Norman Redlich, Corp. Counsel, for the City of New York by Evan A. Davis, Asst. Corp. Counsel, Alexander Gigante, Jr., and Evelyn Junge, New York City.

## MEMORANDUM

STEWART, District Judge:

These actions, instituted by plaintiff Exxon Corporation on March 9, 1973 and by plaintiffs Getty Oil Co., Mobil Oil Corporation and Sun Oil Company of Pennsylvania on March 14, 1973, seek declaratory and injunctive relief against the enforcement of Section 1403.2–13.11 of the Administrative Code of the City of New York which prescribes the maximum lead content of regular and premium grade gasoline sold within the City of New York.

Plaintiffs contend that the New York law should be declared null and void because it has been preempted by the promulgation of federal regulations, and because it violates the commerce clause of the Constitution by discriminating against interstate commerce and by imposing extensive and unreasonable burdens on interstate commerce.

Plaintiffs additionally contend that compliance with the City's lead restrictions would be extremely costly, whereas enforcement of the law would not result in any demonstrable improvement in the City's air quality.

Upon the application by all of the plaintiffs for a preliminary injunction, these actions were consolidated for a hearing which was held on March 15, 1973. The precise issue before this Court is whether defendants should be preliminarily enjoined from enforcing or taking any steps to enforce the provisions of Section 1403.2–13.11(a)(3) &

(4) of Chapter 57 of the Administrative Code of the City of New York; or from imposing upon any of the plaintiffs any fine or penalty pursuant to Section 1403–2–15.25(d) of the Code; or from barring or attempting to bar the purchase, sale, offer for sale, storage or transportation of plaintiffs' gasoline intended for use in the City of New York by reason of any non-compliance with the challenged provisions.

Section 1403.2–13.11 provides for the gradual reduction of the lead content of gasoline over a four year period from 2.0 grams per gallon in 1971 to 0 grams per gallon by January 1, 1974.

On November 6, 1972 ten suppliers of gasoline, including plaintiff Exxon Corporation, applied for a variance pursuant to Section 1403.2–3.11 first, upon the grounds that the Federal Environmental Protection Administration was then preparing to prescribe a regulation establishing a national control and/or prohibition of lead as a fuel additive in gasoline and, second, because the 0.5 grams per gallon lead restriction would impose an unnecessary and costly hardship. The application was denied by the Administrator on February 16, 1973. However, enforcement of the 1973 standard was suspended until March 30, 1973 for regular gasoline and until June 28, 1973 for premium gasoline.

Paralleling these proceedings, on January 10, 1973 the Federal Administrator, by virtue of his authority under the Clean Air Act, promulgated a regulation dealing with the lead content of gasolines which became effective February 9, 1973. Specifically, this regulation requires that at least one grade of gasoline with a lead content of not more than 0.05 grams per gallon be available throughout the United States by July 1, 1974.

Plaintiffs are subject to substantial civil and criminal penalties if they fail to comply with the challenged provisions of the New York City Administrative Code in that they could be barred from marketing regular gasoline in New York City.

■ On this motion for a preliminary injunction the plaintiffs must show a strong likelihood of ultimate success on the merits and that they will suffer irreparable injury unless such relief is granted. *E. g.*, Intercontinental Container Transport Corp. v. New York Shipping Ass'n., 426 F.2d 884 (2d Cir. 1970).

After considering the arguments ably presented by counsel for all parties and after weighing the equities in this case, I have determined that plaintiffs have not met the compelling burden required of them, and accordingly, I deny their motion for a preliminary injunction.

42 U.S.C. § 1857f–6c provides for the federal preemption of standards for fuel or fuel additives only when the Federal Administrator has prescribed standards or has found that no control is necessary. Allway Taxi, Inc. v. City of New York, 340 F.Supp. 1120 (S.D.N.Y.1972). Section 1857f–6c(c)(4)(A)(ii) specifically provides for preemption "if the Administrator has prescribed under paragraph (1) a control or prohibition applicable to such fuel or fuel additive, unless State prohibition or control is identical to the prohibition or control prescribed by the Administrator".

Paragraph (1), referred to in the above quoted section, delegates power to the Federal Administrator to set standards either for the purpose of protecting automobile pollution control devices or for the purpose of protecting the public health and welfare. 42 U.S.C. § 1857f–6c(c)(1)(A).

Pursuant to his authority under this provision, the Administrator promulgated the aforementioned regulation, effective February 9, 1973, implementing a lead control standard applicable to lead content of gasoline needed to protect automobile emission control devices. See 40 C.F.R. § 80.1; 38 Fed.Reg. 1254–55. The Administrator has not acted pursuant to his authority to set

standards for the use of fuel additives for the purpose of protecting public health or welfare, although he has indicated his intention to do so in the future. See Notice of Proposed Rule Making, 38 Fed.Reg. 1258–61.

In Chrysler Corp. v. Tofany, 419 F.2d 499 (2d Cir. 1969), the court of appeals considered the preemptive effect of the then existing Federal motor vehicle safety standards. The court concluded that the preemptive provision of the Motor Vehicle Safety Act, when properly interpreted in light of the standards issued under it, did not preclude state regulation of auxiliary lighting on motor vehicles. The preemptive provision with which that court was concerned precluded state regulation "with respect to any motor vehicle or item of motor vehicle equipment any safety standard *applicable to the same aspect of performance* of such vehicle or item of equipment which is not identical to the Federal standard". 15 U.S.C. § 1392(d). [Emphasis added.] Plaintiffs contend that such language sets that case apart from this one. I cannot agree.

■ It is clear in this instance that Congress recognized the difference between the need for standards to regulate the use of fuel for protection of control devices and the need for such standards for health and safety purposes. The Federal Administrator has acted with regard for the first stated purpose but has not as yet acted with regard to the health standard. Until he does, the City of New York is free to enact and enforce its own regulations. In this regard, it is important to note that courts have narrowly construed the preemptive effect of a federal statute where the exercise of local police power serves the purpose of the federal act. *E. g.*, Chrysler Corp. v. Tofany, *supra.* In Allway Taxi v. City of New York, *supra,* it was expressly held that the New York ordinance here challenged furthered the purpose of the Clean Air Act. 340 F.Supp. at 1124.

■■ It is reasonable to assume that the goal of uniformity which Congress envisioned when it enacted the preemptive provisions of the Clean Air Act was intended to be achieved when the Federal Administrator determined that for a stated purpose, certain standards should be established. When interpreting the preemptive effect of a federal statute, it is thus necessary for a court to inquire as to what purpose the federal standards have been promulgated. Only after such inquiry is made can the preemptive effect of the statute be properly determined. On the basis of the record before me, I conclude that the federal regulations thus far enacted do not preempt the City of New York's fuel control standards.

■ Plaintiffs also fail to show a sufficient likelihood that the burden imposed on interstate commerce by New York City's fuel restrictions is clearly excessive in relation to the putative local benefits. See Pike v. Bruce Church, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

It is traditional for courts in making this determination to attempt to reconcile conflicting claims of state and national power by appraisal of the state and national interests involved. See *e. g.*, Southern Pacific Co. v. Arizona, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945). This Court is not, in this respect, concerned with the precise efficacy of New York's lead restrictions. New York's Environmental Protection Agency has apparently determined in its wisdom that lead additives in gasoline are recognized as detrimental to the public health.

While states and their subdivisions are never free to impede the free flow of commerce, even in the exercise of their police power, the challenged regulations do not purport to do that, but they merely prescribe the maximum lead content of regular and premium grade gasoline sold within the City of New York. Although such prescription must unavoidably affect the process by which gasoline is distributed in interstate commerce, I can not conclude on the record before me that this burden is likely to

be clearly excessive in relation to the benefits that such regulation bestows upon the population of a high traffic area such as New York City. Nevertheless, plaintiffs have raised substantial issues in this regard which may necessitate further inquiry as this case proceeds to a final determination on the merits.

I do not now determine that no burden on interstate commerce would result if every state and locality were free to impose different fuel standards for emission control devices or for health purposes. I merely conclude that plaintiffs have not sufficiently shown a likelihood that the New York restrictions presently impose an unconstitutional burden on interstate commerce.

For these reasons this motion by plaintiffs for a preliminary injunction is denied.

So ordered.