Thomas M. Vernon, M.D. Executive Director Colorado Department of Health 4210 East 11th Avenue Denver, Colorado 80220
Dear Dr. Vernon:
I am writing in response to your request for a formal legal opinion regarding the Air Quality Control Commission's authority to adopt a regulation requiring the use of oxygenated fuels in Colorado.
QUESTION PRESENTED AND CONCLUSION
Does the Air Quality Control Commission have the authority to adopt a regulation requiring the use of oxygenated fuels in Colorado?
 Yes, the Air Quality Control Commission (the Commission) has the authority to adopt a regulation requiring the use of oxygenated fuel in Colorado.
ANALYSIS
Colorado has enacted the Colorado Air Quality Act, sections25-7-101 through 25-7-505, C.R.S. (1982 and 1986 Supp.), which has as one of its main objectives "to attain and maintain the national ambient air quality standards, . . ." (section 25-7-102, C.R.S. (1982)).
This Act provides the underlying statutory authority for Colorado's federally approved State Implementation Plan (SIP). The Environmental Protection Agency's (EPA) approval of Colorado's SIP, 40 C.F.R. 52.323,[1] enables the state rather than the EPA to enforce statutes and regulations directed at the state's attaining compliance with national standards for certain air pollutants, including carbon monoxide.
Since Denver and most major population centers in Colorado are in non-attainment areas under the Clean Air Act, 42 U.S.C. § 7401-7642 (1970), ("the Federal Act") for carbon monoxide, the adoption of rules regarding a method to help attain compliance as to carbon monoxide would foster the objectives set forth in the legislative declaration. It is my understanding that the use of oxygenated fuels such as Gasohol, Oxinol, Methanol, and MTBE would result in lower carbon monoxide emissions.
While the general objectives contained in section 25-7-102 do not provide specific guidance as to what types of pollution prevention and abatement rules might be adopted, the statutory duties and authority of the Commission which are set forth in sections 25-7-105, 106, and 109, C.R.S. (1982), provide clear indications of legislative intent.
Section 25-7-106(1)(e), C.R.S. (1982) authorizes the Commission to develop "a control or prohibition respecting the use of a fuel or fuel additives in a motor vehicle to the extent authorized by section 211(c) of the federal act." Section 211(c) of the federal act (42 U.S.C. § 7545) deals with the regulation of fuels and allows a state "to prescribe and enforce . . . a control or prohibition respecting the use of a fuel or fuel additive" where authority for doing so is part of the approved State Implementation Plan as provided in section 110 (42 U.S.C. § 7410) of the federal act. Since section 25-7-106(1)(e), C.R.S. (1982) provides underlying authority for Colorado's federally approved State Implementation Plan, section 211(c) of the federal act provides specific federal authority for the State's regulation of fuel and fuel additives.
Further support for the Commission's authority to adopt regulations regarding the use of oxygenated fuel is found at section 25-7-109(3)(d), C.R.S. (1982), which provides that the Commission's emission control regulations "shall include, but shall not be limited to . . . [s]pecifications, prohibitions, and requirements pertaining to fuels and fuel additives, such as tetraethyl lead." Section 25-7-105(1)(b), C.R.S. (1982) requires the Commission to adopt "[e]mission control regulations in conformity with section 25-7-109."
CAVEAT
While the statutory authority cited above in itself allows regulation by the Commission regarding the use of fuels and fuel additives, the impact of a proposed regulation on interstate commerce must be considered. The Commerce Clause of the U.S. Const. art. 1 § 8, cl. 3, gives authority to the federal government to regulate commerce "among the several states." A state regulation which places an unreasonable burden on interstate commerce is invalid. Minnesota v. Barber,136 U.S. 319 (1890). Aldens Inc. v. Ryan, 571 F.2d 1159
(10th Cir. 1978), cert. denied, 439 U.S. 860,58 L.Ed. 169.
While no other state has regulations requiring the use of oxygenated fuel, analogous laws have been upheld as not violative of the commerce clause. In Exxon Corp. v. the City of NewYork, D.C.N.Y. (1973), 356 F. Supp. 660 (D.C. N.Y. 1973),remanded on other grounds, 480 F.2d 460 (2d Cir. 1973), the court held that plaintiffs were not entitled to a preliminary injunction against enforcement of New York City regulations prescribing the maximum lead content of regular and premium grade gasoline sold in the city where there was not shown to be a sufficient likelihood that the burden imposed on interstate commerce by the restrictions was clearly excessive in relation to the putative local benefit.
In South Terminal Corp. v. EPA, 504 F.2d 646 (5th Cir. 1974), the court held that Congress has the power to delegate authority to the EPA to regulate local transportation activities for the purpose of reducing emissions so as to satisfy air quality standards.
Advice regarding the validity of a proposed regulation must include an analysis of the regulation and its economic and practical effects. Without benefit of reviewing the specific regulation which might be proposed, no definitive advice regarding its validity in terms of the Commerce Clause can be given. However, compliance with the state's own requirements of technical feasibility and economic reasonableness as set forth in section 25-7-102, C.R.S. (1982) will render the regulation less vulnerable to attack. In addition, regulating the sale
rather than the use of certain type of fuel would allow vehicles entering the state to use up the fuel in their vehicles before refueling with the local fuel.
SUMMARY
The Commission has the authority to adopt technologically feasible and economically reasonable regulations requiring the use of oxygenated fuel in Colorado. An analysis of the regulation's validity under the Commerce Clause cannot be provided until a specific regulation is proposed.
Very truly yours,
 DUANE WOODARD Attorney General
AIR POLLUTION MOTOR VEHICLES
Section 25-7-102, C.R.S. (1982) Section 25-7-105(1)(b), C.R.S. (1982) Section 25-7-106(1)(b), C.R.S. (1982) Section 25-7-109(3)(d), C.R.S. (1982)
HEALTH, DEPARTMENT OF
AIR QUALITY CONTROL COMM.
The Air Quality Control Commission has the authority to adopt a technologically feasible and economically reasonable regulation requiring the use of oxygenated fuels.
[1] The federal Clean Air Act (section 110, 42 U.S.C. § 7410), provides authority for EPA approval of a SIP. While final EPA approval of that part of Colorado's SIP dealing with carbon monoxide has not yet been approved, reasonable further efforts toward compliance with the standard is required.