[No. 2342-3.   Division Three.   August 8, 1978.]

THE FRAME FACTORY, INC., *Appellant,* v. THE DEPART-
MENT OF ECOLOGY, *Respondent.*

*Bruce L. Ireland,* for appellant.

*Slade Gorton, Attorney General, Charles B. Roe, Jr., Senior Assistant,* and *Robert Jensen, Assistant,* for respondent.

McINTURFF, J.—The Frame Factory appeals from an order finding it in violation of the Washington clean air act (RCW 70.94) for having the catalytic converter removed from its leased 1975 Chrysler Cordoba automobile.

A Spokane optical shop, The Frame Factory, leased the car from a local dealer early in 1975. At the time of its manufacture, the auto was subject to the provisions of the federal clean air act (42 U.S.C. § 1857 *et seq.*) and had been equipped at the factory with a catalytic converter as part of the manufacturer's attempts to meet the exhaust emission standards contained in the federal legislation and implementing regulations (40 C.F.R. part 85).

Following delivery, the converter caused a "rotten egg" odor which made one passenger ill. The car was twice returned to the dealer in an attempt to eliminate or lessen the offensive odor. When it persisted, The Frame Factory had the catalytic converter removed at a local muffler shop

contrary to an implementing regulation of the state clean air act.

That regulation provides:

No person shall remove or render inoperable any devices or components of any systems on a motor vehicle installed as a requirement of federal law or regulation for the purpose of controlling air contaminant emissions, . . .

WAC 18–24–040. The regulation was enacted to prevent and control air contaminant emissions resulting from the operation of motor vehicles. WAC 18–24–010.

Acting upon a complaint and the admission of The Frame Factory that it had the converter removed, the Department of Ecology served the optical firm with a notice of violation and order on November 21, 1975. It was in an alternative form requiring The Frame Factory to either reinstall the converter or to cease and desist from further operation of the vehicle. The Frame Factory challenged the notice at a formal hearing before the Washington Pollution Control Hearing Board which affirmed the action taken by the Department of Ecology. The Board's decision was appealed to the Superior Court which also affirmed the Department's action. It is from that judgment The Frame Factory appeals.

█ The first question is whether the promulgation of the regulation prohibiting the removal of devices such as the catalytic converter is invalid because it is beyond the power granted to the Department of Ecology under the clean air act. The Frame Factory contends the Department's powers are limited *solely* to establishing and adopting air quality objectives and air quality and emission standards pursuant to RCW 70.94.331 which provides:

(1) *The state board shall have all the powers as provided in RCW 70.94.040.*

(2) The state board, *in addition to any other powers vested in it by law* after consideration at a public hearing held in accordance with chapter 42.32 RCW and chapter 34.04 RCW shall:

(a) Adopt rules and regulations establishing air quality objectives and air quality standards;

(b) Adopt emission standards which shall constitute minimum emission standards throughout the state. . . .

(c) Adopt by rule and regulation air quality standards and emission standards for the control or prohibition of emissions to the outdoor atmosphere of dust, fumes, mist, smoke, other particulate matter, vapor, gas, odorous substances, or any combination thereof. Such requirements may be based upon a system of classification by types of emissions or types of sources of emissions, or combinations thereof, which it determines most feasible for the purposes of this chapter.

(Italics ours.)

The unambiguous language of the statute indicates a legislative intent that the Department of Ecology be vested with powers beyond those of simply establishing and adopting air quality standards and objectives. There is a specific delegation of the powers contained in RCW 70.94-.141 and a reference to "other powers vested" in the Department. RCW 70.94.141 provides:

The board of any activated authority in addition to any other powers vested in them by law, shall have power to:

(1) Adopt, amend and repeal its own ordinances, resolutions, or rules and regulations, as the case may be, *implementing this chapter and consistent with it, . . .*

. . .

(3) *Issue such orders as may be necessary to effectuate the purposes of this chapter and enforce the same* by all appropriate administrative and judicial proceedings subject to the rights of appeal . . .

(Italics ours.) The purpose of the act is

*to provide* for a coordinated state–wide program of *air pollution prevention and control,* for an appropriate distribution of responsibilities between the state, regional, and local units of government, and for cooperation across jurisdictional lines in dealing with problems of air pollution.

(Italics ours.) RCW 70.94.011.

■ Having decided that the Department is authorized to engage in rule making and to issue orders necessary to effectuate those rules, we turn next to the question of whether the regulation prohibiting the removal of catalytic converters falls within the Department's power under the statutory framework of the clean air act. There is a presumption that the regulation is valid, and the burden of challenging it is upon the party attacking it. *See Weyerhaeuser Co. v. Department of Ecology,* 86 Wn.2d 310, 314, 545 P.2d 5 (1976). Our review in such situations generally is limited to determining whether the regulation is reasonably consistent with the statute it purports to implement. *Weyerhaeuser Co. v. Department of Ecology, supra.*

The Frame Factory contends the regulation is inconsistent with the clean air act because it does not establish or adopt air quality or emission standards. We disagree and find (1) it is reasonably consistent with the purpose of the statute as set out in RCW 70.94.011 above; and (2) it, in effect, adopts as a statewide standard the requirements of the federal government as they relate to later–model automobiles.

■ First, the parties concede that the catalytic converter was placed on the car by the manufacturer in compliance with the federal clean air act and its implementing regulations in order to meet exhaust emission standards set by the federal government. The federal legislation prohibits the removal of such devices prior to the sale and delivery of the automobile to the ultimate purchaser. 42 U.S.C. § 1857f–2(a)(3). The "ultimate purchaser" is defined as "the first person who in good faith purchases such new motor vehicle . . . for purposes other than resale." 42 U.S.C. § 1857f–7(5). The questioned state regulation essentially takes up where the federal statute expressly ends—it prohibits the removal of devices such as the catalytic converter once the automobiles in which they have been installed reach the ultimate purchaser. Extending the impact of federal emission standards and requirements is neither unreasonable nor inconsistent with the purpose of the state act.

Nonetheless, The Frame Factory argues that the federal act preempts state regulation of air pollution from mobile sources pursuant to 42 U.S.C. § 1857f–6a(a) which provides:

*No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part.* No State shall require certification, inspection, or any other approval relating to the control of emissions from any new motor vehicle or new motor vehicle engine as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle, motor vehicle engine, or equipment.

(Italics ours.) A "new motor vehicle" is defined by the federal act as "a motor vehicle the equitable or legal title to which has never been transferred to an ultimate purchaser". 42 U.S.C. § 1857f–7(3). Thus, federal preemption ends when the vehicle is passed on to the ultimate purchaser. *See Allway Taxi, Inc. v. City of New York,* 340 F. Supp. 1120, 1124 (S.D.N.Y.), *aff'd,* 468 F.2d 624 (2d Cir. 1972).

Finally, The Frame Factory complains that the regulation may be used to convict a violator under the criminal section of the act, RCW 70.94.040,[1] without proof that the vehicle, absent the catalytic converter, was causing air pollution. Its position is that RCW 70.94.430[2] also makes the violation of a regulation promulgated under the act a crime. The latter statute does not require a showing that the violation caused air pollution. The argument is not well taken because the latter statute relates only to penalties for criminal violations which are established by the former. In order to impose criminal penalties the State must prove the

---

[1]RCW 70.94.040 states:

"Except where specified in a variance permit, as provided in RCW 70.94.181, it shall be unlawful for any person knowingly to cause air pollution or knowingly permit it to be caused in violation of this chapter, or of any ordinance, resolution, rule or regulation validly promulgated hereunder."

[2]RCW 70.94.430 states:

"Any person who violates any of the provisions of this chapter, or any ordinance, resolution, rule or regulation in force pursuant thereto, other than RCW

accused knowingly caused air pollution in violation of the act or one of the regulations promulgated under it. In order to recover civil penalties the necessary authority need prove only a violation of one of the act's provisions.[3] While a violation of the act may be grounds for either criminal or civil sanctions, no proof of pollution is required in order to impose a civil penalty.

Having determined the validity of the questioned regulation, we turn next to the question of selective enforcement. The Frame Factory has alleged that the Department of Ecology's enforcement of the regulation is so sparse and selective as to constitute impermissible discrimination in violation of the equal protection guaranties of both the state and federal constitutions. It argues that such enforcement mandates dismissal of the instant action.

The record indicates that only The Frame Factory and one other party had been cited for violating the regulation at the time of the administrative hearing. Action by the Department in both instances was taken after a complaint

---

70.94.205, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than two hundred fifty dollars, or by imprisonment for not more than ninety days, or by both fine and imprisonment for each separate violation. Each day upon which such violation occurs shall constitute a separate violation.

"Any person who wilfully violates any of the provisions of this chapter or any ordinance, resolution, rule or regulation in force pursuant thereto shall be guilty of a gross misdemeanor. Each day upon which such wilful violation occurs shall constitute a separate offense. Upon conviction the offender shall be punished by a fine of not less than one hundred dollars for each offense.

"Any person who wilfully violates RCW 70.94.205 or any other provision of this act shall be guilty of a gross misdemeanor and upon conviction thereof shall be punished by a fine of not less than one hundred dollars nor more than one thousand dollars, or by imprisonment for a term of not more than one year or by both fine and imprisonment."

[3]RCW 70.94.431 states:

"In addition to or as an alternate to any other penalty provided by law, any person who violates any of the provisions of chapter 70.94 RCW or any of the rules and regulations of the department or the board shall incur a penalty in the form of a fine in an amount not to exceed two hundred fifty dollars per day for each violation."

was received. Yet, the Department was aware enough of the prevailing practice of converter removal that it sent a memorandum to automotive service facilities a month after this action advising them it was illegal to remove catalytic converters. There also was evidence that the Department was aware that about one–half the cars on the state's roads, including those equipped with federally mandated emission control devices, do not meet the state's standards.

Laxity in enforcement as to some is not of itself a defense to enforcement against others. Our court in *State v. Lee,* 87 Wn.2d 932, 936, 558 P.2d 236 (1976), recently quoted favorably from *State v. Hicks,* 213 Ore. 619, 637, 325 P.2d 794 (1958):

> We do find that there has been laxity in the enforcement of the habitual criminal law but mere laxity is not and cannot be held to be a denial of the equal protection of the law. If the failure of prosecutors to enforce the criminal laws as to some persons should be converted into a defense for others charged with crime, the result would be that the trial of the district attorney for nonfeasance would become an issue in the trial of many persons charged with heinous crimes and the enforcement of law would suffer a complete breakdown.

The Frame Factory does not allege that it was selected for "prosecution" on the basis of some prohibited grounds such as race, religion or other arbitrary classification. But it asserts there is no justifiable reason why it was selected for enforcement. The record indicates two complaints concerning converter removal were made to the Department; it took action against both alleged violators. Under these circumstances, The Frame Factory's argument lacks merit. *See State v. Lee, supra.*

The judgment of the Superior Court is affirmed.

MUNSON, C.J., and ROE, J., concur.