[No. 3396–II.   Division Two.   January 29, 1980.]

PUGET SOUND AIR POLLUTION CONTROL AGENCY, *Appellant,*
v. KAISER ALUMINUM & CHEMICAL CORPORA-
TION, *Respondent.*

274

*Keith D. McGoffin,* for appellant.

*Edward M. Lane* and *Joanne Henry,* for respondent.

PETRIE, J.—Puget Sound Air Pollution Control Agency (PSAPCA) appeals from a judgment declaring certain of its regulations invalid and unenforceable. We affirm.

On April 29, 1976, two of PSAPCA's inspectors observed alumina leaking from a hopper gate of a railroad car located approximately one–half mile from Kaiser Aluminum & Chemical Corporation's load–out facility at the Port of Tacoma. On August 11 an inspector observed alumina escaping from vents at one of Kaiser's storage domes also located at the Port of Tacoma. There is no indication that Kaiser knew that alumina was leaking or escaping until that fact was brought to the attention of Kaiser's supervisory employees by the inspectors. In each instance the inspector issued a notice of violation asserting that Kaiser

had violated section 9.03(b) of PSAPCA's Regulation I, which provides in part:

"After July 1, 1975, it shall be unlawful for any person to cause or allow the emission of any air contaminant for a period or periods aggregating more than three (3) minutes in any one hour, which is:

(1) Darker in shade than that designated as No. 1 (20% density) on the Ringelmann Chart, as published by the United States Bureau of Mines; or

(2) Of such opacity as to obscure an observer's view to a degree equal to or greater than does smoke described in subsection 9.03(b)(1); . . ."

A civil penalty in the amount of $250 was imposed by PSAPCA for each violation, and Kaiser appealed to the Pollution Control Hearings Board (PCHB). The violations were affirmed; but the civil penalty for the April 29 incident was suspended, and the civil penalty for the August 11 incident was reduced to $100. Kaiser then appealed to the Superior Court for Pierce County, and judgment was entered reversing the decision of the PCHB for the reason that section 9.03(b) of PSAPCA's Regulation I was an invalid extension of the powers granted to PSAPCA because the regulation permitted assessment of civil penalties without proof of "scienter."

Kaiser asserts that RCW 70.94.040 specifies the minimum standard of culpability by which unlawfulness is measured for causing or permitting "air pollution." That statute provides:

Except where specified in a variance permit, as provided in RCW 70.94.181 [not applicable], it shall be unlawful for any person *knowingly* to cause air pollution or *knowingly* permit it to be caused in violation of this chapter, or of any ordinance, resolution, rule or regulation validly promulgated hereunder.

(Italics ours.)

Except for a technical change having no significance to this appeal, that statute has remained intact since its enactment in 1957, some 10 years prior to enactment of the present comprehensive Washington Clean Air Act of 1967.

Indeed, in its technically modified form it was reenacted as part of that 1967 act. Laws of 1967, ch. 238, § 3. Accordingly, Kaiser contends any rule or regulation subsequently promulgated by an administrative agency pursuant to authority granted by the Washington Clean Air Act and which purports to declare unlawful any act which pollutes the air, to be enforceable, must contain the element of "knowingly" violating the rule or regulation. Because section 9.03(b) does not expressly require that element, and PSAPCA certainly does not assert that it is inherently included,[1] Kaiser asserts that PSAPCA exceeded its authority when the regulation was promulgated.

PSAPCA contends that it is simply asserting a right to impose a civil "penalty in the form of a fine" as an alternative or additional remedy authorized by RCW 70.94.431, which provides in part:

> In addition to or as an alternate to any other penalty provided by law, any person who violates any of the provisions of chapter 70.94 RCW or any of the rules and regulations of the department or the board shall incur a penalty in the form of a fine in an amount not to exceed two hundred fifty dollars per day for each violation.

PSAPCA contends that the "scienter" argument has already been rejected by another division of this court, citing *Frame Factory, Inc. v. Department of Ecology*, 21 Wn. App. 50, 583 P.2d 660 (1978).

◼ We begin our analysis by acknowledging that the regulation is presumed valid, the burden of challenging it is upon the party attacking it, and that burden is not met when the regulation is reasonably consistent with the statute being implemented. *Washington Water Power Co. v. State Human Rights Comm'n*, 91 Wn.2d 62, 586 P.2d 1149 (1978); *Weyerhaeuser Co. v. Department of Ecology*, 86 Wn.2d 310, 545 P.2d 5 (1976).

---

[1]*See Tacoma v. Lewis*, 9 Wn. App. 421, 513 P.2d 85 (1973) for an example of a local ordinance which impliedly, although not expressly, requires scienter as an element of the defined offense.

■ There is no doubt that the statutorily declared public policy of the Washington Clean Air Act is to provide state, regional, and local units of government with broad authority to develop comprehensive programs of air pollution prevention and control. RCW 70.94.011. Nevertheless, throughout the entire history of the act, the only statutorily declared standard of individual or corporate activity or conduct specifically proscribed as "unlawful" is the pronouncement contained in RCW 70.94.040. As previously noted, that declaration of unlawful activity requires the element of scienter, *i.e.*, "knowingly cause" or "knowingly permit" *air pollution*. To be sure, several sections of the act prescribe remedies in the event that a person violates any provision of the act or any ordinance, resolution, rule or regulation in force pursuant thereto. *See* RCW 70.94.425 (injunctive relief); RCW 70.94.430 (criminal penalties following conviction of a misdemeanor or gross misdemeanor); RCW 70.94.435 (assurances of discontinuance); and RCW 70.94.431 (civil penalty in the form of a fine). These several sections of the act, however, merely specify alternative *remedies* for acts which violate or wilfully violate the act or validly promulgated regulations authorized by the act; they do not in and of themselves define a standard of conduct which is condemned as unlawful.

The real issue in this appeal is whether or not PSAPCA can specify as "unlawful" (and consequently subject to the several alternative remedies specified in the act) a standard of conduct less culpable than that condemned by the act itself.

PSAPCA's rule–making authority is derived from RCW 70.94.141 which, insofar as applicable to this appeal, provides:

> The board of any activated authority in addition to any other powers vested in them by law, shall have power to:
> (1) Adopt, amend and repeal its own ordinances, resolutions, or rules and regulations, as the case may be, *implementing this chapter and consistent with it,* after

consideration at a public hearing held in accordance with chapter 42.32 RCW.

(Italics ours.)

So long as pollution of the air is statutorily condemned as unlawful only when it is knowingly caused or knowingly permitted, we fail to see how an administrative agency can validly declare as unlawful and promulgate a standard of conduct "implementing" the act and "consistent with it" which authorizes that agency to impose civil or criminal sanctions for less culpable activity. The mere fact that RCW 70.94.431 provides a civil penalty for violation of the act or of a validly promulgated regulation—instead of a wilful violation—does not indicate a legislative intent that administrative agencies may declare unlawful that which the act itself does not declare unlawful.

PSAPCA's reliance on a statement in *Frame Factory, Inc. v. Department of Ecology, supra,* is unwarranted. In that case imposition of a civil penalty upon a lessee of a motor vehicle who deliberately and intentionally removed a catalytic converter contrary to administrative regulations was affirmed. The question of the lessee's scienter, or of the regulation's lack of a requirement of scienter, was not an issue in *Frame Factory.* Nevertheless, the court declared:

> In order to impose criminal penalties the State must prove the accused knowingly caused air pollution in violation of the act or one of the regulations promulgated under it. In order to recover civil penalties the necessary authority need prove only a violation of one of the act's provisions. While a violation of the act may be grounds for either criminal or civil sanctions, no proof of pollution is required in order to impose a civil penalty.

(Footnote omitted.) *Frame Factory, Inc. v. Department of Ecology, supra* at 56.

We view the above quotation as dictum not necessary to the decision in that case. We choose not to follow it. Thus, "strict liability" for polluting the air cannot be imposed until RCW 70.94.040 is repealed or modified.

█ PSAPCA suggests, however, that RCW 70.94.040 was *impliedly* repealed either by amendment of RCW 70.94.430 in 1973 or by enactment of RCW 70.94.431 in 1969 (and its minor amendment in 1973). Statutes are impliedly repealed by later acts only if (1) the later act covers the entire subject matter of the earlier legislation, is complete in itself, and is evidently intended to supersede prior legislation on the subject; or (2) the two acts are so clearly inconsistent with and repugnant to each other that they cannot be reconciled and both given effect by a fair and reasonable construction. *Asarco, Inc. v. Air Quality Coalition*, 92 Wn.2d 685, 601 P.2d 501 (1979).

█ It is readily apparent that the first standard is not met. The earlier legislation, not the later legislation, was the comprehensive act; the 1969 and 1973 amendments merely provided minor adjustments to the 1967 comprehensive act.

The second standard for implied repeal must be more thoroughly analyzed. The enforcement provisions of the 1967 act were (1) injunctive relief, (2) assurance of discontinuance, and (3) criminal prosecution for a gross misdemeanor—all applicable to any person who violates any provision of that act or any regulation promulgated thereunder. The only mention of a *wilful* violation applied to one who wilfully violated a provision which required the furnishing of records and information for the confidential use of administering agencies.

The "civil penalty" enforcement provision was first enacted in 1969. It provided a "penalty in the form of a fine" for "any person who violates any of the provisions of chapter 70.94 RCW or any of the rules and regulations" of administering agencies. Laws of 1969, 1st Ex. Sess., ch. 168, § 53, subsequently codified as RCW 70.94.431. (In 1973, housekeeping amendments to this statute were enacted, but the penalty continued to be applicable to "any person who violates" the act and regulations. Laws of 1973, 1st Ex. Sess., ch. 176, § 2.) Thus, in 1969, when the additional remedy was established there was no reference in the act to

a "wilful" violation (except the confidential records provision). The mere creation of the civil penalty did not repeal or modify RCW 70.94.040. Accordingly, in 1969 the introduction of a civil penalty maintained the same "standard of culpability" for all methods of enforcement that had been provided in the comprehensive act of 1967 which, it must be repeated, reenacted the "knowingly" requirements of RCW 70.94.040.

The legislative history of the development of the criminal penalty enforcement provision, RCW 70.94.430, is somewhat different. No changes to that section were enacted in 1969, but in 1973 the term "wilfully violates" first appeared in the act as applicable to an event other than a wilful violation of the confidential records provision. At that time the distinction was first made between a mere violation, which produced a misdemeanor, and a wilful violation, which produced a gross misdemeanor.

This distinction in the criminal penalties (misdemeanor and gross misdemeanor)—in 1973—had no effect whatsoever on the section of the act which had created the civil penalty in 1969. The 1973 changes in RCW 70.94.430 merely introduced a new element into *criminal* prosecutions reserved for persons who intentionally (wilfully) violated the act or a regulation. In other words, gross misdemeanor punishment was specifically reserved for and could only be meted out to those persons who knowingly caused air pollution or knowingly permitted it to be caused in wilful (intentional) violation of the act or a regulation. Under the common law of this state, the term "wilfully" was not ambiguous. As used in criminal statutes, it meant intentionally and designedly. *State v. Stewart,* 73 Wn.2d 701, 440 P.2d 815 (1968); *State v. Spino,* 61 Wn.2d 246, 377 P.2d 868 (1963).

The present criminal code, subsequently enacted in 1975, distinguishes the culpability of "intentionally" from "knowingly" in RCW 9A.08.010(1)(a) and (b) as follows:

(a) *Intent.* A person acts with intent or intentionally when he acts with the objective or purpose to accomplish a result which constitutes a crime.

(b) *Knowledge.* A person knows or acts knowingly or with knowledge when:

(i) he is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or

(ii) he has information which would lead a reasonable man in the same situation to believe that facts exist which facts are described by a statute defining an offense.

To be sure, RCW 9A.08.010(4) provides:

A requirement that an offense be committed wilfully is satisfied if a person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements plainly appears.

Thus, by statute since 1975, the distinction between "wilfully" and "knowingly" appears to have been minimized, but not necessarily eliminated. In analyzing the Washington Clean Air Act in its totality we are not persuaded by the force of subsequently enacted general concepts of culpability. Nor are we inclined to conclude that the legislature's simple act of restructuring the criminal remedies in that act into misdemeanors and gross misdemeanors effectively and impliedly repealed the act's declaration of what is "unlawful."

We hold, therefore, that section 9.03(b) of PSAPCA's Regulation I, as it is herein administered, is unenforceable as an attempt to promulgate an administrative rule in excess of the agency's powers.

In conclusion, we do not hold that a standard of "strict liability" cannot be imposed upon those who pollute the air; we hold merely that the legislature has not yet granted regionally activated administrative agencies the power to declare a polluting activity "unlawful" and to assess civil penalties for violations thereof unless the regulation, expressly or impliedly, is limited to those who "knowingly" violate its provisions.

Judgment affirmed.

REED, C.J., and PEARSON, J., concur.

Reconsideration denied February 25, 1980.

Review denied by Supreme Court April 24, 1980.