[No. 55274–6.   En Banc.   April 13, 1989.]

ASARCO, INCORPORATED, *Petitioner,* v. PUGET SOUND AIR POLLUTION CONTROL AGENCY, ET AL, *Respondents.*

*Eisenhower, Carlson, Newlands, Reha, Henriot & Quinn,* by *Michael R. Thorp,* for petitioner.

*McGoffin & McGoffin,* by *Keith D. McGoffin,* for respondent Puget Sound Air Pollution Control Agency.

*Kenneth O. Eikenberry, Attorney General,* and *Laurie Sillers Halvorson, Assistant,* for respondent Department of Ecology.

*Ross A. MacFarlane* and *Deborah E. Hilsman* on behalf of U.S. Environmental Protection Agency, amici curiae for respondents.

CALLOW, C.J.—ASARCO challenges the authority of the Puget Sound Air Pollution Control Agency (PSAPCA) and the Washington State Department of Ecology (DOE) to enforce regulations which prohibit the emission of air contaminants based solely on an emission's opacity. We uphold the agencies' authority to enforce the challenged regulations, finding that (1) the Legislature has explicitly given the agencies the authority to adopt such emission standards, and (2) the agencies reasonably could determine that the opacity standard would further the Clean Air Act's (RCW 70.94) purpose of preventing air pollution.

On December 28, 1983, a PSAPCA inspector observed a blue–white smoke emission arising from molten slag that had just been dumped for cooling as part of ASARCO's standard copper smelting operation. Using a Ringelmann Smoke Chart to measure the opacity of the emission, the inspector determined that the emission exceeded 20 percent opacity for more than 3 minutes. Based on this observation, PSAPCA issued a notice and order of civil penalty in the amount of $250 for violation of PSAPCA regulation I, § 9.03(b) and WAC 173–400–040(1).

PSAPCA regulation I, § 9.03(b) provides:

> After July 1, 1975, it shall be unlawful for any person to cause or allow the emission of any air contaminant for a period or periods aggregating more than three (3) minutes in any one hour which is:
>
> (1) Darker in shade than that designated as No. 1 (20% density) on the Ringelmann Chart, as published by the United States Bureau of Mines.

WAC 173–400–040(1) provides in pertinent part:

> Visible emissions. No person shall cause or permit the emission for more than three minutes, in any one hour, of an air contaminant from any emissions unit which at the emission point, or within a reasonable distance of the emission point, exceeds twenty percent opacity . . .

ASARCO appealed the fine to the Pollution Control Hearings Board (PCHB), which upheld the penalty. The

Superior Court reversed the PCHB's determination on the ground that the regulations exceeded the authority granted to PSAPCA and DOE by RCW 70.94.040 and RCW 70.94-.030(2). The Court of Appeals reversed the trial court and reinstated the penalty. *Asarco, Inc. v. Puget Sound Air Pollution Control Agency*, 51 Wn. App. 49, 751 P.2d 1229 (1988). We accepted review.

■ The facts are undisputed. Accordingly, we review this case for "error of law." Under this standard, this court is entitled to "substitute its determination for that of the agency, although the agency's determination is entitled to substantial weight." *Renton Educ. Ass'n v. Public Empl. Relations Comm'n*, 101 Wn.2d 435, 441, 680 P.2d 40 (1984).

ASARCO admits that the agencies can *constitutionally* regulate emissions on the basis of opacity, as measured by the Ringelmann Smoke Chart. "The Ringelmann Smoke Chart has been widely accepted throughout the United States as a measurement of air pollution by both legislatures and courts, and we find ourselves in agreement with the wisdom of this acceptance." *Sittner v. Seattle*, 62 Wn.2d 834, 836, 384 P.2d 859 (1963), *cert. denied*, 377 U.S. 906 (1964). *See generally* Annot., *Air Pollution: Evidence as to Ringelmann Chart Observations*, 51 A.L.R.3d 1026, 1028–30 (1973).

Instead, ASARCO asserts that PSAPCA and DOE do not have the *statutory authority* to regulate emissions on the basis of opacity because such emissions will not necessarily meet the Legislature's definition of "air pollution." RCW 70.94.040 prohibits air pollution:

> Except where specified in a variance permit, . . . it shall be unlawful for any person to cause air pollution or permit it to be caused in violation of this chapter, or of any ordinance, resolution, rule or regulation validly promulgated hereunder.

RCW 70.94.030(1) states:

> "Air contaminant" means dust, fumes, mist, smoke, other particulate matter, vapor, gas, odorous substance, or any combination thereof.

RCW 70.94.030(2) states:

> "Air pollution" is presence in the outdoor atmosphere of one or more air contaminants in sufficient quantities and of such characteristics and duration as is, or is likely to be, injurious to human health, plant or animal life, or property, or which unreasonably interfere with enjoyment of life and property.

RCW 70.94.141 grants certain powers to the regional pollution control boards:

> The board of any activated authority in addition to any other powers vested in them by law, shall have power to:
>
> (1) Adopt, amend and repeal its own ordinances, resolutions, or rules and regulations, as the case may be, implementing this chapter and consistent with it . . .
>
> . . .
>
> (3) Issue such orders as may be necessary to effectuate the purposes of this chapter and enforce the same by all appropriate administrative and judicial proceedings . . .

ASARCO asserts that RCW 70.94.040 is the only section of the Clean Air Act which specifically makes conduct unlawful. ASARCO relies on two decisions, now referred to as *Kaiser* I and *Kaiser* II, to sustain its argument. ASARCO asserts the agencies may only penalize an individual for causing "air pollution," claiming that RCW 70.94.141 only grants regional boards the authority to adopt regulations "implementing this chapter and consistent with it".

In the first of these cases, *Puget Sound Air Pollution Control Agency v. Kaiser Aluminum & Chem. Corp.*, 25 Wn. App. 273, 607 P.2d 870 (*Kaiser* I), *review denied*, 93 Wn.2d 1023 (1980), the court struck down PSAPCA's Regulation I, § 9.03(b). This is the same regulation at issue in this case. At the time, RCW 70.94.040 made it unlawful for any person *knowingly* to cause or permit air pollution. The court held that under RCW 70.94, "the only statutorily declared standard of individual or corporate activity or conduct specifically proscribed as 'unlawful' is the pronouncement contained in RCW 70.94.040." 25 Wn. App. at

277. Because the regulation did not incorporate a knowledge element, the court struck it down as declaring "unlawful that which the act itself does not declare unlawful." 25 Wn. App. at 278.

The court declined to interpret the penalty provisions of RCW 70.94 to give the agency additional substantive power. The court reasoned that the sections providing for civil, criminal, and injunctive remedies "merely specify alternative *remedies* for acts which violate or wilfully violate the act or validly promulgated regulations authorized by the act; they do not in and of themselves define a standard of conduct which is condemned as unlawful." 25 Wn. App. at 277. The court also emphasized that under RCW 70.94.141, PSAPCA's rule making authority was limited to adopting rules "*implementing this chapter and consistent with it.*" 25 Wn. App. at 277. The court held that PSAPCA had no power to prohibit anything other than conduct prohibited by RCW 70.94.040. Shortly after *Kaiser* I was decided, the Legislature struck the word "knowingly" from RCW 70.94.040, in effect reversing the decision. Laws of 1980, ch. 175, § 2.

In the second case, *Kaiser Aluminum & Chem. Corp. v. Pollution Control Hearings Bd.*, 33 Wn. App. 352, 654 P.2d 723 (1982) (*Kaiser* II), the court considered a challenge to PSAPCA's Regulation I, § 9.04, which prohibited "the discharge of particulate matter which becomes deposited upon the real property of others." Following *Kaiser* I, the court held that because RCW 70.94.040 did not proscribe the mere emission of particulate matter, the regulation made conduct unlawful which the enabling statute did not. 33 Wn. App. at 355.

■■ We distinguish *Kaiser* I and *Kaiser* II, and hold that RCW 70.94.040 is not the sole source of agency authority under the Clean Air Act. In both cases, the court only considered the substantive effect of RCW 70.94.141's grant of administrative powers to the regional pollution control boards. However, other sections of the Clean Air Act give DOE and the regional boards specific authority to

undertake specific activities. The act's penalty provisions affirmatively give the agencies the power to enforce regulations adopted pursuant to such specific authority.

RCW 70.94.331(2) specifically gives DOE power to adopt rules relating to air quality and emission standards *in addition to* the powers granted by RCW 70.94.141. RCW 70.94.331 provides:

(1) The department shall have all the powers as provided in RCW 70.94.141.

(2) The department, in addition to any other powers vested in it by law . . . shall:

. . .

(c) Adopt by rule and regulation air quality standards and emission standards for the control or prohibition of emissions to the outdoor atmosphere of [air contaminants].

RCW 70.94.030(11) and (12) define the terms "air quality standard" and "emission standard":

"Emission standard" means a limitation on the release of a contaminant or multiple contaminants *into the* ambient air.

"Air quality standard" means an established concentration, exposure time and frequency of occurrence of a contaminant or multiple contaminants in the ambient air which shall not be exceeded.

RCW 70.94.431 provides that any person:

who violates any of the provisions of chapter 70.94 RCW or any of the rules and regulations of the department or the board shall incur a civil penalty . . .

By explicitly requiring DOE to adopt separate standards for air quality and emissions, the Legislature clearly intended to give DOE the power to regulate emissions that do not by themselves constitute air pollution. DOE must adopt an air quality standard sufficiently limiting the *aggregate* concentrations of contaminants in the ambient air to avoid air pollution. DOE also must adopt emission standards to control the release of contaminants from any *individual* source. These two standards effectuate the Legislature's purpose of preventing air pollution. DOE must set

emissions standards substantially below air pollution levels to prevent the aggregate discharge of contaminants by any two or more individual sources from causing air pollution. In addition, RCW 70.94.425, .430, .431 and .435 provide for enforcement, under the act, not merely against air polluters, but against all persons who violate the provisions of the act, or any rule or regulation in force pursuant to the act. Further, RCW 70.94.331(2) permits different methods to effectuate the purposes of the act. Under the last sentence of RCW 70.94.331(2) the requirements adopted "*may* be based upon a system of classification by types of emissions." This language is permissive, not mandatory. That section of the statute does not require the agencies to issue only regulations which classify by type of emission.

The Legislature has also given the regional pollution control authorities, including PSAPCA, powers in addition to those conferred by RCW 70.94.141. For example, RCW 70.94.380(1) requires local authorities to have requirements for the control of emissions "which are *no less stringent* than those adopted by the department of ecology . . ." (Italics ours.) RCW 70.94.380(2) provides that "[n]othing in this chapter shall be construed to prevent a local or regional air pollution control authority from adopting and enforcing *more stringent* emission control requirements than those adopted by the department of ecology . . ." (Italics ours.) RCW 70.94.331(6) provides that "[t]he department shall enforce the air quality standards and emission standards throughout the state except where a local authority is enforcing the state regulations or its own regulations which are *more stringent* than those of the state." (Italics ours.)

This court will uphold agency regulations which are consistent with the legislative scheme. *Ravsten v. Department of Labor & Indus.*, 108 Wn.2d 143, 154, 736 P.2d 265 (1987). The Legislature may delegate the authority to determine the existence of some fact which will bring into play a proscription or affirmative requirement of the law. *Barry & Barry, Inc. v. Department of Motor Vehicles,* 81

Wn.2d 155, 159, 500 P.2d 540 (1972). An agency may fill in the gaps of a statutory framework if necessary to effectuate a general statutory scheme. *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 448, 536 P.2d 157 (1975). The statute reveals a concern for the overall statewide and regional problem of air quality and a desire to solve the problem which, by its nature, ignores human boundary lines. RCW 70.94.011 envisions a liberal delegation of responsibility to regional or multicounty bodies when it states "it is the purpose of this chapter to provide . . . for an appropriate distribution of responsibilities between the state, regional, and local units of government". Responsibilities cannot be distributed unless there is a delegation of authority.

*Northwest Gillnetters Ass'n v. Sandison,* 95 Wn.2d 638, 646–47, 628 P.2d 800 (1981), said "[t]here has been a lawful delegation of authority if the legislature has provided general standards which define in general terms what is to be done and who is to do it, and procedural safeguards exist to control arbitrary administrative action." *See also Weyerhaeuser Co. v. Southwest Air Pollution Control Auth.,* 91 Wn.2d 77, 79–80, 586 P.2d 1163 (1978); *Barry & Barry, Inc. v. Department of Motor Vehicles, supra* at 159. The Legislature has instructed DOE and PSAPCA to adopt emissions standards which control air pollution while providing for further economic development. RCW 70.94.011. The Legislature has also provided the necessary procedural safeguards against arbitrary and capricious action; any agency rule can be tested by a declaratory judgment action pursuant to RCW 34.04.070. *See Sandison,* 95 Wn.2d at 647. Our interpretation of the legislative intent does not grant these agencies constitutionally impermissible discretion.

The agencies' interpretation of the Clean Air Act advances the act's fundamental purpose of preventing air pollution. RCW 70.94.011. ASARCO's interpretation of the statute does not advance that fundamental purpose. We adopt the agencies' interpretation.

We hold that DOE and PSAPCA can enforce the challenged regulations. The decision of the Court of Appeals is affirmed.

UTTER, BRACHTENBACH, DOLLIVER, DORE, PEARSON, ANDERSEN, DURHAM, and SMITH, JJ., concur.