[No. 9375–8–II.   Division Two.   April 8, 1988.]

ASARCO, INCORPORATED, *Respondent,* v. PUGET SOUND AIR
POLLUTION CONTROL AGENCY, ET AL, *Appellants.*

*Keith D. McGoffin* and *McGoffin & McGoffin,* for appellant Puget Sound Air Pollution Control Agency.

*Kenneth O. Eikenberry, Attorney General,* and *Terese N. Richmond, Assistant,* for appellant Department of Ecology.

*Michael R. Thorp* and *Eisenhower, Carlson, Newlands, Reha, Henriot & Quinn,* for respondent.

*Ross A. MacFarlane* on behalf of U.S. Environmental Protection Agency, amicus curiae.

PETRICH, J.—The Puget Sound Air Pollution Control Agency (PSAPCA) and the State of Washington by and through the Department of Ecology (DOE) appeal a superior court judgment reversing the Pollution Control Hearings Board's affirmance of an assessment of a civil penalty by PSAPCA[1] against ASARCO for emitting smoke plumes in violation of PSAPCA's Regulation I, section 9.03(b)(1) and DOE's WAC 173–400–040(1). The Superior Court, concluding that the regulations were beyond the purview of the agencies' statutory authority,[2] declared the regulations invalid. We disagree and reverse.

ASARCO, Inc., owned and operated a copper smelter in Tacoma. On December 28, 1983, a PSAPCA inspector saw ASARCO employees dumping molten slag, a by–product of the copper smelting process, in a disposal area. The inspector observed plumes of blue–white smoke rising into the air. Utilizing the Ringelmann method, a standard technique for measuring the opacity of smoke, the inspector determined that the opacity of the smoke from two emissions exceeded 20 percent for 16¼ minutes within a 1–hour period. During this 1–hour period the opacity of the smoke was measured at 100 percent for a total of 1 minute, 60 percent for a total of 1 minute and at no less than 35 percent for "the remaining time necessary to exceed a total of three minutes."

---

[1]PSAPCA is a local authority authorized to enforce state regulations dealing with air quality and emissions standards, as well as its own regulations on these matters, provided its regulations are no less stringent than the state regulation, RCW 70.94.211 and 70.94.331(2)(b). No one denies that PSAPCA's regulation is as stringent as DOE's. The issue before this court is the validity of both regulations.

[2]The Washington Clean Air Act, RCW 70.94.

PSAPCA assessed a civil penalty of $250[3] against ASARCO for violation of PSAPCA. Regulation I, § 9.03(b)(1) and DOE's WAC 173–400–040(1). PSAPCA Reg. I, § 9.03(b)(1) in pertinent part provides:

> (b) . . . it shall be unlawful for any person to cause or allow the emission of any air contaminant for a period or periods aggregating more than three (3) minutes in any one hour which is:
>
> (1) Darker in shade than that designated as No. 1 (20% density) on the Ringelmann Chart, as published by the United States Bureau of Mines. . . .

WAC 173–400–040(1) promulgated by DOE states:

> (1) Visible emissions. No person shall cause or permit the emission for more than three minutes, in any one hour, of an air contaminant from any emissions unit which at the emission point, or within a reasonable distance of the emission point, exceeds twenty percent opacity . . .

On ASARCO's appeal, the Pollution Control Hearings Board affirmed the penalty. ASARCO then appealed to the Superior Court.

The Superior Court, indicating that it was relying on principles enunciated in *Kaiser Aluminum & Chem. Corp. v. Pollution Control Hearings Bd.*, 33 Wn. App. 352, 654 P.2d 723 (1982),[4] held the regulations invalid and reversed the Pollution Control Hearings Board. ASARCO argues, and the court below agreed, that the regulations merely penalize the emission into the outdoor atmosphere of contaminants causing opacity of a certain degree and duration without regard to whether the emitted contaminants are or are likely to be injurious in some manner, or interfere unreasonably with the enjoyment of life and property, so as

---

[3]The $250 assessment was the maximum civil assessment then allowable by former RCW 70.94.430. Laws of 1984, ch. 255, § 1, increased the maximum allowable assessment per violation to $1,000.

[4]*Kaiser* invalidated a regulation of PSAPCA which proscribed the discharge of particulate matter onto property of another and upheld a different regulation which proscribed the emission of air contaminants harmful to persons or which causes damage to property or business. It did not address the validity of the regulations now under review.

to amount to air pollution as defined by RCW 70.94.030(2) and made unlawful by RCW 70.94.040.

Judicial review of the decision of the Pollution Control Hearings Board (the Board) after a formal hearing, as here, is governed by RCW 34.04.130[5] and .140 of the administrative procedure act. RCW 43.21B.180. Our review of an administrative decision is on the record of the administrative tribunal itself, not that of the superior court. *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 323, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983).

Because the facts are undisputed, the court reviews the Board's decision de novo under the error of law standard. Whether the Board committed an error of law turns on whether it properly interpreted the validity of the regulations of PSAPCA and DOE. At issue, then, is the scope of the rulemaking authority of PSAPCA and DOE and whether that authority was exceeded in the adoption and promulgation of the regulations before us. Our review of this issue is limited. We simply must ascertain whether the rules are reasonably consistent with the statutes they purport to implement.

The following principles enunciated in *Green River Comm'ty College v. Higher Educ. Personnel Bd.,* 95 Wn.2d 108, 112, 117, 118, 622 P.2d 826 (1980), *adhered to as modified,* 95 Wn.2d 962, 633 P.2d 1324 (1981) are particularly appropriate to the task before us:

---

[5]RCW 34.04.130(6) states:

"The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

"(a) in violation of constitutional provisions; or

"(b) in excess of the statutory authority or jurisdiction of the agency; or

"(c) made upon unlawful procedure; or

"(d) affected by other error of law; or

"(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

"(f) arbitrary or capricious."

Certain well settled principles govern the scope of an administrative agency's rule–making authority. First, an agency has only those powers either expressly granted or necessarily implied from statutory grants of authority. *Anderson, Leach & Morse, Inc. v. State Liquor Control Bd.,* 89 Wn.2d 688, 694, 575 P.2d 221 (1978). Second, an agency does not have the power to promulgate rules that amend or change legislative enactments. *Fahn v. Cowlitz County,* 93 Wn.2d 368, 383, 610 P.2d 857 (1980). Third, rules may "'fill in the gaps'" in legislation if such rules are "necessary to the effectuation of a general statutory scheme." *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 448, 536 P.2d 157 (1975). Fourth, administrative rules adopted pursuant to a legislative grant of authority are presumed to be valid and should be upheld on judicial review if they are reasonably consistent with the statute being implemented. *Fahn,* at 374. Fifth, a party attacking the validity of an administrative rule has the burden of showing compelling reasons that the rule is in conflict with the intent and purpose of the legislation. *Weyerhaeuser Co. v. Department of Ecology,* 86 Wn.2d 310, 314–17, 545 P.2d 5 (1976).

The Washington Clean Air Act (RCW 70.94) was enacted in 1967 (Laws of 1967, ch. 238). Its purpose is to secure and maintain beneficial levels of air quality in this state and to comply with the federal clean air act. RCW 70.94.011. *Asarco, Inc. v. Air Quality Coalition,* 92 Wn.2d 685, 709, 601 P.2d 501 (1979).

RCW 70.94.040 provides:

Except where specified in a variance permit, as provided in RCW 70.94.181, it shall be unlawful for any person to cause air pollution or permit it to be caused in violation of this chapter, or of any ordinance, resolution, rule or regulation validly promulgated hereunder.

RCW 70.94.030(2) defines air pollution as follows:

"Air pollution" is presence in the outdoor atmosphere of one or more air contaminants in sufficient *quantities* and of such *characteristics* and *duration* as is, or is likely to be, injurious to human health, plant or animal life, or property, *or which unreasonably interfere with enjoyment of life and property.*

(Italics ours.) RCW 70.94.030(1) states that:

"Air contaminant" means dust, fumes, mist, smoke, other particulate matter, vapor, gas, odorous substance, or any combination thereof.

DOE administers the act on a statewide basis. Regional authorities, such as PSAPCA, administer the act within their respective geographical areas. RCW 70.94.053; RCW 70.94.211. DOE and PSAPCA are authorized to adopt implementing resolutions, rules and regulations so long as they are consistent with the act. RCW 70.94.141; RCW 70.94.331(1).

DOE is specifically authorized to adopt "air quality standards and emission standards for the control or prohibition of emissions to the outdoor atmosphere of radionuclides, dust, fumes, mist, smoke, other particulate matter, vapor, gas, odorous substances, or any combination thereof", RCW 70.94.331(2)(c), which is another way of saying it is authorized to control the emission of air contaminants into the outdoor atmosphere. *See* RCW 70.94.030(1). An air quality standard is defined as "an established concentration, exposure time and frequency of occurrence of a contaminant or multiple contaminants in the ambient air which shall not be exceeded." Former RCW 70.94.030(13). PSAPCA's rules may be more stringent than DOE's, but they may not be less stringent. RCW 70.94.380. As one of the means of enforcing the act, a person who violates the act or any rule or regulation of DOE or PSAPCA is subject to a civil penalty. RCW 70.94.431.

ASARCO concedes, and indeed stipulated before the Board, that the plumes of smoke observed on its premises contained "air contaminants" as that term is defined in RCW 70.94.030(1). It nevertheless argues that air contaminants creating a degree of opacity proscribed by the regulation does not amount to air pollution.

█ Two sets of factors, defining air pollution, are set forth in the statutory definition of the term. Air contaminants of sufficient quantities, characteristics, and duration as to be harmful or potentially harmful to humans, etc., amount to air pollution when emitted into the outdoor

atmosphere. However, there may be air pollution in the absence of such harm or potential for harm. The emission into the outdoors of air contaminants neither harmful nor potentially harmful may still amount to air pollution if the air contaminants unreasonably interfere "with enjoyment of life and property." This dual concept of air pollution is reinforced by the statutory scheme of the Washington Clean Air Act.

The penalties for causing air pollution may be avoided by obtaining a variance permit. RCW 70.94.040. However, a variance permit is not allowed for emission of air contaminants that endanger health or safety. RCW 70.94.181(1)(a). There is no need to obtain a variance permit if one is not causing air pollution.[6] Consequently, air pollution must embrace conduct much broader than emitting into the outdoor atmosphere harmful or potentially harmful air contaminants. Otherwise, one could never qualify for a variance. Air pollution, then, also embraces the emission of air contaminants which, though not harmful to persons or property, do unreasonably interfere with the enjoyment of life and property.

There was no evidence before the Board that emissions of contaminants with an opacity of 20 percent for a duration of 3 minutes within 1 hour, without more, were harmful, or potentially so, or that such emissions unreasonably interfere with the enjoyment of life and property. However, there was evidence of a correlation between opacity in general (without relation to any degree or duration) and its harmful effects or its capacity to affect one's enjoyment of life and property. The document entitled EPA's *Guidelines for Evaluation of Visible Emission; Certification, Field Procedures, Legal Aspects, and Background Material,* EPA–340/1–75–007 (Apr. 1975) (the *Guidelines*) was

---

[6]We note with interest that in 1975 ASARCO sought a variance from the strictures of PSAPCA's Regulation I, section 9.03(b)(1), the same same regulation it challenges in these proceedings. *See Asarco, Inc. v. Air Quality Coalition,* 92 Wn.2d 685, 601 P.2d 501 (1979).

admitted in evidence. The *Guidelines* provides scientific evidence of a correlation between opacity and harm to health and property, as well as a correlation between opacity and a diminished enjoyment of life and property (each chapter is supported by a bibliography of scientific studies). Section 9.5 of the *Guidelines* states that particles from 0.5 to 1 micron in size do the greatest damage in the alveolar region of the lungs, and are also the most significant cause of opacity because they are the same size as the wavelengths of light, thus tending to scatter light. Section 9.5 concludes: "There is then a correlation between the plume opacity, as determined by the observer in the field, and the amount of lung–damaging particulate being emitted." Section 8.1(7) states: "Although it is usually not possible to accurately quantify the reduction in mass emissions by visual observations, there is a definite relationship between reducing visible emissions and improvements in particulate air quality." The *Guidelines* also concludes that water vapor (another cause of opacity) "can have adverse effects on the environment," section 5.1, and can cause fog, ice, and reduced visibility, creating safety hazards for automobiles, aircraft and shipping. Section 5.2.

No one can seriously dispute that the emission into the outdoors of air contaminants causing opacity of any amount will result in some sort of interference with one's enjoyment of life or property. One may question what degree and duration of opacity amounts to an unreasonable interference. The appropriate agencies have determined that limit. Our capacity to question the validity of the opacity test as an air pollution test is quite limited. The agencies' scientific expertise is entitled to great deference. "[T]he court is not free to substitute its judgment as to the desirability or wisdom of the rule, for the legislative body, by its delegation to the agency, has committed those questions to administrative judgment and not to judicial judgment." *Weyerhaeuser Co. v. Department of Ecology,* 86 Wn.2d 310, 314, 545 P.2d 5 (1976) (quoting 1 K. Davis, *Administrative Law* § 5.05, at 315 (1958)).

The Legislature itself has acknowledged that an opacity standard is an appropriate measure of at least one form of air pollution. In 1984 the Legislature increased the maximum civil penalty for violation of the act and its implementing rules and regulations. The maximum penalty was raised to $1,000 per day for each violation. At the same time, the Legislature placed a lower limit for a violation of opacity standards by providing, "Notwithstanding any other provisions of this chapter, no penalty may be levied for the violation of any *opacity standard* in an amount exceeding four hundred dollars per day." (Italics ours.) Former RCW 70.94.431(3) (Laws of 1984, ch. 255, § 2).

█ While we do not believe the statute is ambiguous, one might argue otherwise. Arguably one might claim there exists a conflict between the definition of the term air pollution, which is clearly proscribed, and declaring it unlawful to violate rules and regulations establishing air quality standards without explicitly requiring that the violation of the standards results in some harm or unnecessarily interferes with the enjoyment of life or property. Assuming an ambiguity exists, the agencies' construction of the statute is of considerable importance in determining its meaning.

The validity of an administrative rule may also be tested by the construction placed on the authorizing statute by the administrative agency. *Washington Water Power Co. v. State Human Rights Comm'n*, 91 Wn.2d 62, 68–69, 586 P.2d 1149 (1978). Moreover, an administrative construction nearly contemporaneous with the passage of the statute, especially when the legislature fails to repudiate the contemporaneous construction, is entitled to great weight. *Morin v. Johnson*, 49 Wn.2d 275, 279, 300 P.2d 569 (1956). Finally, a contemporaneous construction by the department charged with administering an ambiguous statute is even more persuasive if the legislature not only fails to repudiate the construction, but also amends the statute in some other particular without disturbing the administrative interpretation. *Bradley v. Department of Labor & Indus.*, 52 Wn.2d 780, 786–87, 329 P.2d 196 (1958).

58

*Green River Comm'ty College v. Higher Educ. Personnel Bd.*, 95 Wn.2d 108, 117–18, 622 P.2d 826 (1980), *adhered to as modified*, 95 Wn.2d 962, 633 P.2d 1324 (1981).

The Washington Clean Air Act was adopted in 1967. PSAPCA's regulation was promulgated the following year. *See Asarco, Inc. v. Air Quality Coalition*, 92 Wn.2d 685, 702–03, 601 P.2d 501 (1979). In 1970, the Washington State Air Pollution Control Board, DOE's predecessor under the act, by regulation established emission standards for primary aluminum plants, which, *inter alia*, prohibited visible emissions from all sources with opacity of 20 percent density or more on the Ringelmann Chart for more than 3 minutes in any hour.[7] DOE, starting in 1972, has adopted regulations limiting emissions from all sources of air contaminants with various shadings of opacity and duration.[8]

PSAPCA's regulation was adopted as nearly contemporaneously with the adoption of the act as one can expect. DOE's predecessor, shortly after the act was adopted, promulgated a similar opacity standard to control pollution as it was authorized to do by the act. The Legislature has amended the act numerous times but has never disturbed the construction of the act by the agencies created to administer it.[9] This is persuasive authority upholding the

---

[7]Washington State Air Pollution Control Board Order 14 amending WAC 18–52–030 adopted May 20, 1970.

[8]DOE Order 72–6 adopting WAC 18–04–040 (Jan. 24, 1972) (limiting emissions exceeding 40 percent opacity for more than 3 minutes in the hour); DOE Order 72–29 amending WAC 18–04–040 (Jan. 22, 1973) (limiting emissions exceeding 40 percent opacity for more than 3 minutes in the hour); DOE Order 76–38 adopting WAC 173–400–040(1) (Dec. 21, 1976) (limiting emissions exceeding 20 percent opacity for more than 3 minutes in the hour); DOE Order 78–21 amending WAC 173–400–040 (Apr. 27, 1979) (emission standards same as in DOE Order 76–38); DOE Order 80–14 amending WAC 173–400–040 (adopted July 28, 1980) (emission standards same as in DOE Order 76–38); DOE Order 83–13 amending WAC 173–400–040 (adopted Mar. 30, 1983) (emission standards same as in DOE's Order 76–38).

[9]Laws of 1980, ch. 175; Laws of 1979, ch. 141; Laws of 1975, 1st Ex. Sess., ch. 106; Laws of 1973, 1st Ex. Sess., ch. 193; Laws of 1969, 1st Ex. Sess., ch. 168.

validity of the agencies' construction of the act. We are satisfied that ASARCO has failed to meet its burden of showing that the regulations under review are in conflict with the intent and purpose of the Washington Clean Air Act. Recognizing the presumption of validity, as we must, we are satisfied that the regulations under review are reasonably consistent with the act and therefore are valid.

The Superior Court's judgment is reversed and the Board's affirmance of the civil penalty is affirmed.

ALEXANDER, A.C.J., concurs.

WORSWICK, J. (dissenting)—Air pollution is bad, but worse is a bureaucracy set up to deal with the subject that does not know how and refuses to learn. Twice this court has spelled out what Puget Sound Air Pollution Control Agency must include in a valid regulation. *Puget Sound Air Pollution Control Agency v. Kaiser Aluminum & Chem. Corp.*, 25 Wn. App. 273, 607 P.2d 870, *review denied*, 93 Wn.2d 1023 (1980), (*Kaiser* I); *Kaiser Aluminum & Chem. Corp. v. Pollution Control Hearings Bd.*, 33 Wn. App. 352, 654 P.2d 723 (1982) (*Kaiser* II). Apparently learning nothing from this, PSAPCA has again attempted to enforce an invalid regulation. This time, because of the chance rotation of panel judges, PSAPCA has found a majority willing to ignore these holdings, reinterpret the statute, overlook the lack of a factual basis for the regulation, and allow PSAPCA to make conduct unlawful at its whim. This is a deplorable turn of events. I find it unacceptable that the law now is to be changed because the court has changed. *See Wyman v. Wallace*, 94 Wn.2d 99, 106–08, 615 P.2d 452 (1980) (Hicks and Stafford, JJ., dissenting).

After its inspector had made his observations, PSAPCA assessed civil penalties against ASARCO for violation of WAC 173–400–040(1) and its mirror image, PSAPCA Reg. I, § 9.03(b). The latter provides:

(b) . . . [I]t shall be unlawful for any person to cause or allow the emission of any air contaminant for a period

or periods aggregating more than three (3) minutes in any one hour which is:

(1) Darker in shade than that designated as No. 1 (20% density) on the Ringelmann Chart, as published by the United States Bureau of Mines; . . .[10]

On ASARCO's appeal, the Pollution Control Hearings Board affirmed the penalties. ASARCO then appealed to the Superior Court, where PSAPCA's and DOE's position amounted to no more than the same assertion made in *Kaiser* I and *Kaiser* II: that under the general language of the clean air act, RCW 70.94, they had the authority to promulgate and enforce these regulations. Following *Kaiser* I and *Kaiser* II, the trial court held the regulations invalid because they merely penalized opaque emissions without regard to whether they constituted air pollution as defined in RCW 70.94.030(2), and made unlawful by RCW 70.94-.040.

In so holding, the trial court was entirely correct. RCW 70.94.040 provides:

Except where specified in a variance permit, as provided in RCW 70.94.181, it shall be unlawful for any person to cause air pollution or permit it to be caused in violation of this chapter, or of any ordinance, resolution, rule or regulation validly promulgated hereunder.

RCW 70.94.030(2) defines air pollution, as follows:

"Air pollution" is presence in the outdoor atmosphere of one or more air contaminants in sufficient *quantities* and of such *characteristics* and *duration* as is, or is likely

---

[10]The majority makes much of the longevity of these regulations (majority, at 58), and the Legislature's inaction (majority, at 58), and the fact that ASARCO sought no relief from these regulations in *Asarco, Inc. v. Air Quality Coalition,* 92 Wn.2d 685, 709 P.2d 501 (1979) (footnote 6). The simple fact is that the regulations have never before been seriously challenged; therefore their age and the Legislature's lassitude are irrelevant. Contrary to the majority's implication as to ASARCO's previous position, the issue in *Asarco, Inc. v. Air Quality Coalition, supra,* had to do with the characteristics and effects of specific emissions; mere opacity was not the issue.

to be, injurious to human health, plant or animal life, or property, or which unreasonably interfere with enjoyment of life and property.

(Italics mine.)

In *Kaiser* I, PSAPCA had assessed penalties against Kaiser under Reg. I, § 9.03(b) because of the escape of alumina from a railroad car and from vents in a storage dome. There being no evidence that Kaiser knew of this, we did not specifically discuss whether the escapage constituted air pollution. Rather, we held that the regulation exceeded PSAPCA's authority because it made unlawful an occurrence not unlawful under the then version of RCW 70.94-.040, which made air pollution unlawful when *knowingly* caused or permitted. We said:

> So long as pollution of the air is statutorily condemned as unlawful only when it is knowingly caused or knowingly permitted, we fail to see how an administrative agency can validly declare as unlawful and promulgate a standard of conduct "implementing" the act and "consistent with it" which authorizes that agency to impose civil or criminal sanctions for less culpable activity. . . .

*Kaiser* I, 25 Wn. App. at 278. *Kaiser* I clearly announced that the validity of regulations forming the basis for penalties imposed for conduct made unlawful by the clean air act was to be measured by their consistency with RCW 70.94-.040, which was then, and continues to be, the only section of the act specifically defining unlawful conduct.[11]

*Kaiser* II also involved the escape of alumina, resulting in penalties assessed under two different regulations. Consistent with *Kaiser* I, we held invalid the penalties assessed under Reg. I, § 9.04, which provided, in part:

> It shall be unlawful for any person to cause or allow the discharge of particulate matter which becomes deposited upon the real property of others, . . .

---

[11]Arguably, RCW 70.94.775 also defines unlawful conduct, inasmuch as it specifically prohibits certain acts.

We held that this regulation did not comport with RCW 70.94.040, because it penalized something other than air pollution as defined in RCW 70.94.030(2).[12]

The principles announced in *Kaiser* I and *Kaiser* II should apply here. Validity of a PSAPCA regulation (for simplicity, my discussion hereafter will refer only to the PSAPCA regulation) is to be measured by RCW 70.94.040, which proscribes air *pollution,* not air *opacity.*[13] The vice of Reg. I, § 9.03(b) is that it substitutes a mere tool for measuring opacity, the Ringelmann method, for a standard for measuring air pollution as defined in the act.

An administrative agency is limited to the exercise of powers granted by the Legislature. *Washington Water Power Co. v. State Human Rights Comm'n,* 91 Wn.2d 62, 586 P.2d 1149 (1978). The Legislature has given PSAPCA the power to penalize air pollution, not opacity. Air pollution, as defined in RCW 70.94.030(2), has three characteristics: (1) *quantity* of contaminants; (2) *characteristics* of contaminants; and (3) *duration* of the emission. All three must combine to produce the harm or potential for harm

---

[12]The application of another regulation, I § 9.11, was also before us. *Kaiser* II, although disputing the manner in which the regulation had been applied, properly conceded that it was valid, because it encompassed the necessary relationship with RCW 70.94.040. The regulation provided:

It shall be unlawful for any person to cause or permit the emission of an air contaminant or water vapor, *including an air contaminant whose emission is not otherwise prohibited by this Regulation, if the air contaminant or water vapor causes detriment to the health, safety or welfare of any person, or causes damage to property or business.*

(Italics mine.)

[13]The majority takes solace in a reference in RCW 70.94.431(3) to an opacity standard (majority, at 57). There is no solace here, for no one argues—least of all me—that there cannot be an opacity standard. The point is that an opacity standard, or any other standard, *must* be related to the definition of air pollution.

The Department of Ecology argued here that a regulation embodying the Ringelmann technique is valid because this method for measuring opacity is widely accepted. The argument is a non sequitur. It cannot be disputed that the Ringelmann technique only measures opacity. The fact that it is widely accepted or, for that matter, may have been enacted into law elsewhere is irrelevant. Our Legislature has not seen fit to make opacity alone unlawful; the Ringelmann technique forms no part of the clean air act.

condemned by the act before any emission becomes unlawful air pollution. In promulgating Reg. I, § 9.03(b), PSAPCA attempted to do what the Legislature has not: make the Ringelmann technique part of the law; thus it would prohibit emissions only on the basis of quantity and duration, without regard to characteristics, treating as superfluous an important part of the statute. No word or clause of a statute should be disregarded as superfluous. *Alexander v. Department of Empl. Sec.,* 38 Wn. App. 609, 688 P.2d 516, *review denied,* 103 Wn.2d 1009 (1984). PSAPCA simply cannot do this in the exercise of delegated powers. *See Northwest Gillnetters Ass'n v. Sandison,* 95 Wn.2d 638, 628 P.2d 800 (1981). PSAPCA may not presume a connection between the quantity/duration and the characteristics of an emission, because in so doing it purports to amend the statute by its administrative regulation. *Kaiser* II, at 355.

Considering the limited basis upon which the trial court was urged to uphold the penalties, the majority's discussion—and mine—should have been limited accordingly. However, the Department of Ecology, ignoring RAP 2.5, presented here for the first time an entirely new argument that appears to have impressed my brethren, for it seems to have suggested the basis for the majority's novel "two tiered" version of the statute.

DOE argued that in order effectively to combat air pollution, PSAPCA must be allowed to prohibit activity that does not by itself amount to air pollution but that, when aggregated with other emissions in the same geographical area, might reach harmful proportions. It argued that the act recognizes this by making not one but two things unlawful: (1) causing or permitting air pollution; and (2) violating any state or local regulation on the subject of air quality. I disagree. Perhaps the law should have been written to accomplish the ends proposed by DOE, but it was not, and I cannot countenance its rewriting by the majority. Writing statutes is the Legislature's business, not court business.

In construing a statute a court must ascertain and give effect to the intent of the Legislature *as expressed in the enactment. Nisqually Delta Ass'n v. DuPont,* 103 Wn.2d 720, 696 P.2d 1222 (1985). All of its provisions must be considered in their relation to each other and, if possible, harmonized to insure proper construction of each provision. *Tommy P. v. Board of Cy. Comm'rs,* 97 Wn.2d 385, 645 P.2d 697 (1982). DOE's argument, and the majority's conclusion, will not survive the application of these principles to a careful analysis of the act.

Nowhere does the act confer on any agency the power to make any given emission *unlawful* because of the possibility that it might combine with others and result in air pollution. Had the Legislature intended this it easily could have said so. It did not, and we should not read into the statute what is not there or amend it by construction. *King Cy. v. Seattle,* 70 Wn.2d 988, 425 P.2d 887 (1967). The Legislature did not choose to deal with an aggregate of emissions; rather it chose to provide for enforcement against air polluters on an individual basis. *See* RCW 70.94.040, .425, .430, .431, .435.[14]

---

[14]RCW 70.94.425:

"Restraining orders—Injunctions. Notwithstanding the existence or use of any other remedy, whenever *any person* has engaged in, or is about to engage in, any acts or practices which constitute or will constitute a violation of any provision of this chapter, or any rule, regulation or order issued thereunder, the governing body or board or the department, *after notice to such person* and an opportunity to comply, may petition the superior court of the county wherein the violation is alleged to be occurring or to have occurred for a restraining order or a temporary or permanent injunction or another appropriate order."

RCW 70.94.430:

"Penalties. *Any person who violates any of the provisions* of this chapter, or any ordinance, resolution, rule or regulation in force pursuant thereto shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than one thousand dollars, or by imprisonment for not more than ninety days, or by both fine and imprisonment for each separate violation.

"*Any person* who wilfully violates any of the provisions of this chapter or any ordinance, resolution, rule or regulation in force pursuant thereto shall be guilty of a gross misdemeanor. Upon conviction the offender shall be punished by a fine of not less than one hundred dollars for each offense or by imprisonment for a term of not more than one year or by both fine and imprisonment."

In support of the proposition that DOE (and therefore PSAPCA) is authorized "to control the emission of air contaminants into the outdoor atmosphere", majority, at 54, the majority relies on RCW 70.94.331(2), which authorizes DOE to:

(b) Adopt emission standards which shall constitute minimum emission standards throughout the state. An authority may enact more stringent emission standards, except for emission performance standards for new wood stoves and opacity levels for residential solid fuel burning devices which shall be state–wide, but in no event may less stringent standards be enacted by an authority without the prior approval of the department after public hearing and due notice to interested parties;

(c) Adopt by rule and regulation air quality standards and emission standards for the control or prohibition of emissions to the outdoor atmosphere of radionuclides, dust, fumes, mist, smoke, other particulate matter, vapor, gas, odorous substances, or any combination thereof.

RCW 70.94.431:

"Civil penalties. (1) In addition to or as an alternate to any other penalty provided by law, *any person* who violates any of the provisions of chapter 70.94 RCW or any of the rules and regulations of the department or the board shall incur a civil penalty in an amount not to exceed one thousand dollars per day for each violation. Each such violation shall be a separate and distinct offense, and in case of a continuing violation, each day's continuance shall be a separate and distinct violation. For the purposes of this subsection, the maximum daily fine imposed by a local board for violations of standards by a specific emissions unit is one thousand dollars.

"(2) Further, *the person* is subject to a fine of up to five thousand dollars to be levied by the director of the department of ecology if requested by the board of a local authority or if the director determines that the penalty is needed for effective enforcement of this chapter. A local board shall not make such a request until notice of violation and compliance order procedures have been exhausted, if such procedures are applicable. For the purposes of this subsection, the maximum daily fine imposed by the department of ecology for violations of standards by a specific emissions unit is five thousand dollars."

RCW 70.94.435:

"Additional means for enforcement of chapter. As an additional means of enforcing this chapter, the governing body or board may accept an assurance of discontinuance of any act or practice deemed in violation of this chapter or of any ordinance, resolution, rule or regulation adopted pursuant hereto, *from any person* engaging in, or who has engaged in, such act or practice. . . ." (Italics mine.)

> Such requirements may be based upon a system of class-
> ification *by types of emissions or types of sources of
> emissions, or combinations thereof,* which it determines
> most feasible *for the purposes of this chapter.*

(Italics mine.) However, the majority fails to notice that
these provisions cannot be read in isolation, but must be
read along with the rest of the chapter (*Tommy P. v. Board
of Cy. Comm'rs, supra*), and that the last sentence of RCW
70.94.331(2)(c) specifically contemplates standards based on
the characteristics of emissions in relation to the purposes
of the act. Regulation I, section 9.03(b)(1) has nothing to do
with characteristics beyond opacity. Thus PSAPCA under
this regulation could penalize fog if it could cite Mother
Nature.

The majority's proposition concerning the agency's power
to control emissions is. self–evident, but incomplete. Of
course the agencies are authorized to control emissions *if
the emissions cause air pollution.* The purpose of RCW
70.94 is to prevent air pollution: a condition of the ambient
atmosphere that is harmful to human health and safety and
injurious to plant and animal life, or that unreasonably
interferes with enjoyment of life and property. The over-
riding policy of the act is set forth in the last paragraph of
RCW 70.94.011:

> To these ends it is the purpose of this chapter to
> provide for a coordinated state–wide program of *air pol-
> lution* prevention and control, for an appropriate distri-
> bution of responsibilities between the state, regional, and
> local units of government, and for cooperation across
> jurisdictional lines in dealing with problems of *air
> pollution.*[15]

(Italics mine.)

The provisions in RCW 70.94 for local and state authori-
ties define their responsibility as the prevention or control

---

[15]The broad purpose stated in the majority opinion (majority, at 53) is from
the first paragraph of subsection .011, and is one of several public policies listed.
The last paragraph states the overall purpose.

of air pollution. RCW 70.94.055, .170, .230, .390, .405.[16] All of the sanctions provided in the law are for the enforcement of provisions, ordinances or regulations related to the prevention and control of air pollution. RCW 70.94.211, .332.[17] Subsection .331 must be interpreted in light of the clear

---

[16]RCW 70.94.055:

"Air pollution control authority may be activated by certain counties, when. The board of county commissioners of any county other than a first class, class A or class AA county may activate an *air pollution control authority* following a public hearing on its own motion, or upon a filing of a petition signed by one hundred property owners within the county. If the board of county commissioners determines as a result of the public hearing that:

"(1) *Air pollution exists or is likely to occur*; . . ."

RCW 70.94.170:

"Control officer. Any activated authority which has adopted an ordinance, resolution, or valid rules and regulations as provided herein *for the control and prevention of air pollution* shall appoint a control officer, . . ."

RCW 70.94.230:

"Rules of authority supersede local rules, regulations, etc.—Exceptions. The rules and regulations hereafter adopted by an authority under the provisions of this chapter shall supersede the existing rules, regulations, resolutions and ordinances of any of the component bodies included within said authority *in all matters relating to the control and enforcement of air pollution* as contemplated by this chapter: . . ."

RCW 70.94.390:

"Hearing upon activation of authority—Finding—Assumption of jurisdiction by department—Expenses. The department may, at any time and on its own motion, hold a hearing to determine if the activation of an authority is necessary *for the prevention, abatement and control of air pollution* which exists or is likely to exist in any area of the state. . . ."

RCW 70.94.405:

"Hearing on effectiveness of prevention and control program—Report. At any time after an authority has been activated for no less than one year, the department may, on its own motion, conduct a hearing held in accordance with chapter 42.30 RCW and chapter 34.04 RCW, as now or hereafter amended to determine whether or not the *air pollution prevention and control program* of such authority is being carried out in good faith and is as effective as possible under the circumstances. . . ." (Italics mine.)

[17]RCW 70.94.211:

Violations—Notice—Action by governing body, board or control officer—Hearing—Action by the board. Whenever the board or the control officer has reason to believe that any provision of this chapter or any ordinance, resolution, rule or regulation *relating to the control or prevention of air pollution* has been violated, such board or control officer may cause written notice to be served upon the alleged violator or violators. . . .

intent of the act, *Nisqually Delta Ass'n v. DuPont,* 103 Wn.2d 720, 730, 696 P.2d 1222 (1985), and the agency must act within the framework and policy of the statute. *Burlington Northern, Inc. v. Johnston,* 89 Wn.2d 321, 326, 572 P.2d 1085 (1977). In the final analysis, there simply is no escape from the inexorable conclusion that only air pollution can be penalized, and, as we said in *Kaiser* I and *Kaiser* II, a regulation purporting to penalize anything else is invalid.

This totally obvious conclusion seems finally to have caught up with the majority (majority, at 54), for it attempts to devise its own "2–tiered" interpretation of the statute, albeit at great variance from DOE's "2–tier" argument. Appearing finally to concede that air pollution is indeed the only conduct subject to penalty, the majority purports to distinguish between "harmful" air pollution and air pollution that unreasonably interferes with enjoyment of life or property. It then postulates that any emission will interfere with the enjoyment of life or property (this is questionable but irrelevant to any issue before us), focuses on the word "unreasonably," states that the agency is empowered to determine what is unreasonable, and concludes that the agency has done so by enacting this regulation.

Conceding that the agency is empowered to determine what is an unreasonable interference with the enjoyment of

---

RCW 70.94.332:

Violations—Notice—Action by department. Whenever the department of ecology has reason to believe that any provision of this chapter or any rule or regulation adopted by it or being enforced by it under RCW 70.94.410 *relating to the control or prevention of air pollution* has been violated, it may cause written notice to be served upon the alleged violator or violators. . . .

(Italics mine.)

Subsection .430 makes violations of the chapter, or rules in force pursuant thereto, misdemeanors or gross misdemeanors. If violations are crimes, then only the causing or permitting of air pollution can be violation, since that is the only behavior made criminal under the statute. Thus, unless a violation of Reg. I, § 9.03(b) constitutes air pollution, it may not be punished under subsections .430 or .431 which provide civil penalties as an alternative to criminal prosecutions for violations of the chapter.

life or property, I nevertheless insist that such determination here, if in fact any was made, was whimsical. I know of no legal basis for authorizing an agency to act upon a whim.

The majority also appears to recognize that evidence, not whim, is necessary to support such a determination, for it notes that "[t]here was no evidence before the Board that emissions of contaminants with an opacity of 20 percent for a duration of 3 minutes within 1 hour, without more, were harmful, or potentially so, or that such emissions *unreasonably* interfere with the enjoyment of life and property." (Italics mine.) Majority, at 55. It goes on, however, to assert that there was a showing of a correlation between opacity and harm and a correlation between opacity and diminished enjoyment of life and property. Majority, at 55, citing EPA "guidelines". This is straw grasping of a high order; these "guidelines" simply do not supply a factual connection between the challenged regulation and the statutory definition of air pollution.

The "guidelines" (which for all the record shows have never been adopted by EPA or any other agency) appear in an unofficial publication, the only stated purpose of which is

> to provide the certified visible emissions evaluator, often referred to as a "smoke reader", with certain guidelines to be followed when making visual observations of stationary source emissions. It is intended to supplement EPA policy and procedural guidelines for making opacity determinations.

Guideline 1.2. Contrary to the majority's assertion, these "guidelines" do not, and do not purport to, provide any evidence of a connection between opacity and air pollution as defined in RCW 70.94.030(2). In fact, the introduction to the document takes pains to point out that

> [d]etermination of opacity and shade of any emission alone gives no specific measurements of the quantities of contaminants being emitted.

Guideline 1.1. By relying on these "guidelines," the majority has fallen into just the kind of error that our Supreme

Court has warned against: accepting someone's rule of thumb in lieu of an appropriate factual showing. *See Shannon v. Pay 'N Save Corp.,* 104 Wn.2d 722, 728, 709 P.2d 799 (1985). In short, no evidence that 20 percent opacity amounts to air pollution has ever been presented to the Board, the trial court or this court. PSAPCA cannot expect to prevail on the basis of evidence the court has never seen.

The majority's deference to PSAPCA is misplaced. This court is the proper body to determine the construction and interpretation of statutes. Thus, even when our interpretation is contrary to that of the agency charged with carrying out the law, it is ultimately for us to declare the law and the effect of the statute. *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 130, 580 P.2d 246 (1978). The rationale behind the policy of deference is that substantial consideration should be given to the special knowledge of administrative agencies. *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 448, 536 P.2d 157 (1975). The weight given to a regulation will depend upon the thoroughness evidenced in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors that give it power to persuade, if lacking power to control. *Soriano v. United States,* 494 F.2d 681, 683 (9th Cir. 1974). Deference is appropriate only when the agency's action has a factual basis and is not merely guesswork. *American Petroleum Inst. v. Costle,* 665 F.2d 1176 (D.C. Cir. 1981), *cert. denied,* 455 U.S. 1034, 72 L. Ed. 2d 152, 102 S. Ct. 1737 (1982); *Somer v. Woodhouse,* 28 Wn. App. 262, 272–73, 623 P.2d 1164, *review denied,* 95 Wn.2d 1019 (1981). The challenged regulation fails each of these tests.

The majority's reference to legislative inaction in the face of agency action is misplaced, not only because there has never been a need for legislative action, but because there is a related—and more important—doctrine that should apply. Although the principles I have discussed were last announced in *Kaiser* II in 1982, the Legislature has not seen fit to redefine unlawful conduct, although it has since

enacted nine other amendments.[18] In construing legislation, a court will presume that the Legislature is familiar with past judicial interpretations. *State v. McCullum,* 98 Wn.2d 484, 656 P.2d 1064 (1983). Where there has been judicial interpretation of a statute and the Legislature has had the opportunity to amend it but has not, the Legislature is presumed to have acquiesced in the court's interpretation. *California v. State Tax Comm'n,* 55 Wn.2d 155, 346 P.2d 1006 (1959); *State ex rel. Chealander v. Morgan,* 131 Wash. 145, 229 P. 309 (1924).

As I pause in writing this, I can see from my office window a plume of 100 percent opacity rise into the sky for hours on end from the local pulp mill, but I have heard of no citations because of this from PSAPCA, nor do I expect to. This is fine, for I assume that the plume I see does not cause air pollution. There must be a reason. However, on the record in this case, and under the language of Regulation I, section 9.03(b), there is no more basis for PSAPCA to conclude that ASARCO's plume caused air pollution than for it to conclude that the pulp mill's does not.

For all their vaunted usefulness, administrative agencies must not be allowed to act without a reason supported by the laws creating them. The majority allows PSAPCA to do exactly this.

Reconsideration denied May 11, 1988.

Review granted by Supreme Court September 1, 1988.

---

[18]Laws of 1986, ch. 100, § 55, p. 307; Laws of 1985, ch. 57, § 69, p. 390; Laws of 1985, ch. 372, § 4, p. 1386; Laws of 1985, ch. 456, p. 2031; Laws of 1984, ch. 88, p. 486; Laws of 1984, ch. 164, p. 807; Laws of 1984, ch. 255, p. 1277; Laws of 1984, ch. 277, §§ 1, 2, 3, 5, 6, p. 1501–03; Laws of 1983, ch. 3, §§ 175, 176, 177, p. 119–22.

In contrast, the Legislature did notice our holding in *Kaiser* I, and amended RCW 70.94.040 to delete the word "knowingly."