[No. 14606-1-II.    Division Two.    December 17, 1992.]

TLR, INC., ET AL, *Appellants*, v. THE TOWN
OF LA CENTER, *Respondent*.

*Darrell E. Lee* and *Lee, Mitchelson, Yoseph, Langsdorf & Gray,* for appellants.

*Douglas O. Whitlock* and *Whitlock, Potter & Saunders,* for respondent.

ALEXANDER, J. — TLR, Inc., and Runlee, Inc., together appeal an order of the Clark County Superior Court granting a judgment to the Town of La Center declaring that La Center had authority to impose a tax upon gross receipts from punchboards and pull tabs, including the value of moneys that would have been received from the sale of lost or stolen punchboard tickets and pull tabs. We reverse.

TLR, Inc., and Runlee, Inc., each sell pull tabs and punchboard tickets in establishments in the town of La Center. The pull tabs may be obtained from coin operated machines or they may be purchased directly from employees of the establishments. Purchasers pay either 25 or 50 cents to buy a chance to win a prize from punchboards or pull-tab machines. Winners receive prizes ranging from 50 cents to $100.

Apparently it is not uncommon for pull tabs and punchboard tickets to be taken without payment. The record shows that the coin operated pull-tab machines sometimes get jammed in the open position, allowing persons to take pull tabs without paying for them. Also, the slots on the pull-tab machines can become worn causing two or more tabs to escape from the machine when only 25 or 50 cents has been paid. In addition, some persons use "slugs" and wires to trigger the pull-tab machines in order to obtain pull tabs without payment.

Even in-person purchases of pull tabs from employees are subject to abuse. In some establishments the pull tabs are kept in "fishbowls" and persons have been known to take pull tabs from the bowl while an employee is distracted. In the case of punchboards, some customers punch out more tickets than they have purchased. Winning tickets obtained in these ways may be exchanged for prizes.

La Center sought to recover a tax from TLR and Runlee equal to 5 percent of the gross receipts from the sale of pull tabs and punchboard tickets, including amounts that would have been received from the sale of pull tabs and punchboard tickets that were lost or stolen.

TLR and Runlee brought this declaratory judgment action in Clark County Superior Court to have that court decide whether or not La Center's gross receipts tax may be applied to amounts of money that would have been received from the sale of lost or stolen pull tabs and punchboard tickets. In an amended complaint, TLR and Runlee proposed a set of stipulated facts, generally consistent with what we have set forth above.

TLR and Runlee together moved for a summary judgment. Their motion was denied. The Town of La Center then agreed to stipulate to the set of facts proposed by TLR and Runlee. The trial court considered that stipulation and the "certifications and affidavits" presented by TLR and Runlee and concluded that there were no issues of material fact. Thus, it granted a judgment to La Center declaring that La Center had statutory authority to impose a tax upon all gross receipts from punchboards and pull tabs, including amounts that would have been received from lost or stolen pull tabs and punchboard tickets.

█ We are satisfied that there is no factual dispute here. Indeed, the parties have not suggested otherwise. Our task, therefore, is to determine if the stipulated facts support the trial court's conclusion of law.

Two principal statutes must be applied to the facts of this case. RCW 9.46.110 gives towns authority to tax gross receipts from punchboards and pull tabs. That statute provides that "[t]axation of punch boards and pull-tabs shall not exceed five percent of gross receipts". Pursuant to that statute, the Town of La Center passed an ordinance, number 8, 5.5, section 4.C, which provides that punchboards and pull tabs shall be taxed at a rate of 5 percent of the "gross receipts" from the conduct of such activity.

TLR and Runlee contend that the trial court erred in interpreting the term "gross receipts" to include, in addition to moneys actually received from the sale of chances, amounts that would have been received from the sale of lost or stolen pull tabs and punchboard tickets. They suggest that the term "gross receipts" means only the money, value

or other consideration *actually* received from the gambling activity. It does not, they urge, embrace money that was not received.

■ ■ Our task is to determine the meaning of the term "gross receipts" contained in RCW 9.46.110 and La Center's ordinance. In construing statutes, our primary objective is to carry out the intent of the Legislature. *In re Estate of Little*, 106 Wn.2d 269, 283, 721 P.2d 950 (1986). In so doing, legislative definitions provided in the statutes generally control. *Seattle v. Shepherd*, 93 Wn.2d 861, 866, 613 P.2d 1158 (1980). Where, as here, the statute does not define a material term, we should give words their ordinary meaning. *State ex rel. Graham v. Northshore Sch. Dist. 417*, 99 Wn.2d 232, 244, 662 P.2d 38 (1983).

In ascertaining common meaning, resort can be had to dictionaries. *State ex rel. Graham v. Northshore Sch. Dist. 417, supra.* Black's Law Dictionary 633 (5th ed. 1979) defines the term "gross receipts" as follows:

> **Gross receipts.** Term refers to the total amount of money or the value of other considerations *received* from selling property or from performing services.

(Italics ours.)

The Town of La Center invites us to ignore the common meaning of the term and, instead, rely upon the Gambling Commission's definition of "gross gambling receipts". In WAC 230-02-110, the Commission defined that term as follows:

> *"Gross gambling receipts"* means the monetary value that *would be due* to any operator of a gambling activity for any chance taken, for any table fees for card playing, or other fees for participation, as evidenced by required records. The value shall be stated in U.S. currency, before any deductions for prizes or any other expenses. In the absence of records, gross gambling receipts shall be the maximum that would be due to an operator from that particular activity if operated at maximum capacity.

(Italics ours.)

■ As a general rule, courts need not resort to regulations issued by administrative agencies in determining the mean-

ing of words in a statute. *Nucleonic Alliance, Local Union 1-369 v. WPPSS*, 101 Wn.2d 24, 29, 677 P.2d 108 (1984). Such issues are matters of law, within the conventional competence of the courts. *American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 5, 802 P.2d 784 (1991).

■ Courts are obliged to give substantial weight to an agency's interpretation of a statute which that agency is charged with administrating, if the statutory language is ambiguous. *Pasco v. Public Empl. Relations Comm'n*, 119 Wn.2d 504, 507-08, 833 P.2d 381 (1992). Ambiguous means " '[c]apable of being understood in either of two or more possible senses.' " *Ladum v. Utility Cartage, Inc.*, 68 Wn.2d 109, 116, 411 P.2d 868 (1966); *see also Kunkel v. Meridian Oil, Inc.*, 114 Wn.2d 896, 901, 792 P.2d 1254 (1990).

■ The term "gross receipts", which appears in RCW 9.46-.110 and La Center's ordinance, is unambiguous. We believe the plain meaning of that term is that ascribed to it by Black's Law Dictionary.

■ Furthermore, even if the term is ambiguous, we need not grant deference to the Gambling Commission's regulation. Agency regulations are only entitled to deference when the administrative agency is "charged with administration" of a statute. *See Cosro, Inc. v. State Liquor Control Bd.*, 107 Wn.2d 754, 757, 733 P.2d 539 (1987). An administrative agency may exercise only those powers which the Legislature has conferred upon it. *ASARCO, Inc. v. Puget Sound Air Pollution Control Agency*, 51 Wn. App. 49, 53, 751 P.2d 1229 (1988), *aff'd*, 112 Wn.2d 314 (1989) (citing *Anderson, Leech & Morse, Inc. v. State Liquor Control Bd.*, 89 Wn.2d 688, 694, 575 P.2d 221 (1978)). The State Gambling Commission is charged with the administration of the 1973 gambling act, RCW 9.46 *et seq.* It is not charged with administering town taxation ordinances. The Gambling Commission has no expertise or special competence over taxation matters. It only possesses the power to prescribe the manner and method of payment of taxes "paid to or collected by the commission". RCW 9.46.070(6). While it may, according to RCW 9.46.070(15), set forth model taxation ordinances "for

the perusal" of towns, we do not believe that the provision empowers it to promulgate regulations defining terms in a town's taxation ordinance.

Reversed.

PETRICH, C.J., and MORGAN, J., concur.